PEOPLE v CHARTRAND

1. SEARCHES AND SEIZURES—SEARCH WARRANTS—SUFFICIENT BASIS—
   AFFIDAVITS—HEARSAY—INFORMATION.

   An affidavit by a police officer alone may provide a sufficient basis
   for the issuance of a search warrant where the affidavit recites
   hearsay statements made to the officer by his informant which
   indicate that the informant had been told by the defendant's
   brother and girlfriend that the defendant was storing and using
   cocaine.

2. CONSTITUTIONAL LAW—FOURTH AMENDMENT—FOURTEENTH
   AMENDMENT—SEARCHES AND SEIZURES—SEARCH WARRANTS.

   The Fourth Amendment's Federal standards governing the issu-
   ance of a search warrant apply to the states through the
   Fourteenth Amendment (US Const, Ams IV, XIV).

3. SEARCHES AND SEIZURES—SEARCH WARRANTS—PROBABLE CAUSE—
   INDEPENDENT JUDICIAL OFFICER.

   A search warrant should be issued only where probable cause has
   been determined by an independent judicial officer.

4. ARREST—PROBABLE CAUSE—ARRESTING OFFICER'S KNOWLEDGE—
   TRUSTWORTHY INFORMATION.

   Probable cause for an arrest exists where the facts and circum-

REFERENCES FOR POINTS IN HEADNOTES

[1] 68 Am Jur 2d, Searches and Seizures §§ 64–66.
   Propriety of considering hearsay or other incompetent evidence in
   establishing probable cause for issuance of search warrant. 10
   ALR3d 359.
[2] 68 Am Jur 2d, Searches and Seizures § 6.
[3] 68 Am Jur 2d, Searches and Seizures § 67.
[4] 5 Am Jur 2d, Arrest § 46.
[5] 68 Am Jur 2d, Searches and Seizures §§ 64, 65.
[6] 30 Am Jur 2d, Evidence §§ 493–497.
[7] 68 Am Jur 2d, Searches and Seizures §§ 64–66.
   Search warrants: disputing matters stated in supporting affidavit. 5
   ALR2d 394.
[8] 68 Am Jur 2d, Searches and Seizures §§ 2–6.
[9] 68 Am Jur 2d, Searches and Seizures § 65.
[10] 5 Am Jur 2d, Appeal and Error § 602.

stances within an arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.

5. SEARCHES AND SEIZURES—SEARCH WARRANTS—HEARSAY—AFFIDAVITS—UNDERLYING CIRCUMSTANCES.

Hearsay information may supply facts and circumstances on which an affidavit in support of a search warrant rests; however, in such cases, the judicial officer must be informed of some of the underlying circumstances supporting the conclusions that (1) the object of the search is where it is said to be, and (2) the person providing the hearsay information to the affiant is reliable.

6. EVIDENCE—HEARSAY—PROBABLE CAUSE.

Hearsay can be used to form one link in a chain establishing probable cause; therefore, its use for more than one link should be allowed.

7. SEARCHES AND SEIZURES—SEARCH WARRANTS—AFFIDAVITS—APPEAL AND ERROR—COMMON SENSE.

An affidavit supporting a warrant should be reviewed from a common sense, realistic viewpoint so that the use of warrants will not be discouraged.

8. CONSTITUTIONAL LAW—SEARCHES AND SEIZURES—SEARCH WARRANTS—FOURTH AMENDMENT—SAFEGUARDS—PROBABLE CAUSE—DOUBLE HEARSAY—AFFIDAVITS—UNDERLYING FACTS AND CIRCUMSTANCES.

The safeguards provided by the Fourth Amendment are not violated where a search warrant is based upon probable cause determined in part on double hearsay information contained in a police officer's affidavit, where the affidavit as a whole presented the judicial officer with underlying facts and circumstances to support an independent determination of probable cause (US Const, Am IV).

9. SEARCHES AND SEIZURES—SEARCH WARRANTS—PERSONAL KNOWLEDGE—AFFIDAVITS—CRIMINAL ACTIVITY—STATUTES.

The personal knowledge of an informant required by the statute regarding reasonable and probable cause for the issuance of a search warrant is personal knowledge of matters contained in the affidavit for the warrant and not personal knowledge of the criminal activity itself (MCLA 780.653; MSA 28.1259[3]).

10. APPEAL AND ERROR—CRIMINAL LAW—EVIDENCE—OTHER CRIMINAL
ACTS—OBJECTIONS—FAIR TRIAL.

Introduction of testimony in a criminal trial tending to show other criminal activities by the defendant is not reversible error where a proper objection was not made at trial and where there is no showing on appeal that the unobjected-to testimony deprived the defendant of a fair trial.

Appeal from Alger, William F. Hood, J. Submitted January 4, 1977, at Grand Rapids. (Docket No. 22945.) Decided March 1, 1977.

Hal E. Chartrand was convicted of possession of cocaine. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William A. Werner,* Prosecuting Attorney (Prosecuting Attorney's Appellate Service, *Thomas C. Nelson,* Assistant Attorney General, of counsel), for the people.

*Terence R. Flanagan,* Assistant State Appellate Defender, for defendant.

Before: BEASLEY, P. J., and R. B. BURNS and J. H. GILLIS, JJ.

BEASLEY, J. Defendant was convicted by a jury of possession of cocaine and sentenced to prison. He appeals as a matter of right.

Defendant claims that the search warrant issued to search his apartment was statutorily and constitutionally infirm. A police officer obtained a search warrant from a district judge based upon an affidavit which recited, among other things, that the officer's informant said that he was told by the brother and girlfriend of defendant that defendant was storing and using cocaine. The district judge took a statement from the informant which was placed on tape. When defense counsel objected by

way of motion to exclude, the district judge gave the prosecution an option to make the tape available to counsel for defendant or to rely upon the police officer's affidavit. The prosecution chose the latter and relied upon the police officer's affidavit.

For purposes of this appeal, the question is whether the affidavit alone provides a sufficient basis for issuance of a valid search warrant. The circuit court's suppression of the tape is not at issue here. The circuit court ruled that the warrant was valid. In light of both constitutional and statutory standards, we agree.

The Fourth Amendment[1] Federal standards governing the issuance of a search warrant are applicable to the states through the Fourteenth Amendment.[2] *Aguilar v Texas,* 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723 (1964). It is, therefore, appropriate to discuss these standards here.

The Fourth Amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The United States Supreme Court has developed the outline provided by this amendment. The Court has said that a warrant should issue only if probable cause is determined by an independent judicial officer. *Giordenello v United States,* 357 US 480; 78 S Ct 1245; 2 L Ed 2d 1503 (1958). In explaining the concept of "probable cause", the Court has said:

---

[1] US Const, Am IV.

[2] US Const, Am XIV.

"In dealing with probable cause, * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. *Brinegar v United States*, [338 US 160, 175; 69 S Ct 1302; 93 L Ed 1879 (1949)]. Probable cause exists where 'the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. *Carroll v United States*, 267 US 132, 162; 45 S Ct 280; 69 L Ed 543 (1925)," *Draper v United States*, 358 US 307, 313; 79 S Ct 329; 3 L Ed 2d 327 (1959).

*Draper* involved a search without a warrant after an arrest which was also made without a warrant; however, its discussion of probable cause has also been applied in search warrant contexts. See *Spinelli v United States*, 393 US 410; 89 S Ct 584; 21 L Ed 2d 637 (1969). The Court has also held that hearsay information can supply facts and circumstances on which the affidavit rests. *Jones v United States*, 362 US 257; 80 S Ct 725; 4 L Ed 2d 697 (1960). However, in such cases, the Court has required that the judicial officer must be informed, first, of some of the underlying circumstances supporting the conclusion that the object of the search is where it is said to be and, second, of some of the underlying circumstances supporting the conclusion that the person is reliable who is providing the hearsay information to the affiant. *Aguilar v Texas, supra. Aguilar* dealt with a situation where what may have been an informant's mere suspicion was being sworn to by a police officer; the Court's decision assured that such a suspicion could not be elevated to the status of a fact merely because of its connection to the police officer. 378 US at 114, n 4.

This Court has often used the preceding cases to evaluate the propriety of searches pursuant to a warrant. See, *e.g., People v Iaconis,* 29 Mich App 443; 185 NW2d 609 (1971). In the instant case, however, the affidavit rests, in part, not just on hearsay but on hearsay upon hearsay.

The two steps of the hearsay are as follows: first, from the defendant's brother and from the woman who was living with the defendant to the informant and, second, from the informant to the police officer who swore to the affidavit. This double hearsay might itself be raised as a challenge to the present warrant. However, in our opinion, such a challenge has already been answered by the same logic which supported the use of hearsay in *Jones* and by the safeguards which were developed in *Aguilar.* Simply put, if hearsay can be used to form one link in a chain establishing probable cause, then the same logic should allow its use for more than one link. This is especially true if the *Aguilar* two part test is applied to each link in the chain.

In applying that two part test to the instant facts, we first examine the underlying facts and circumstances supporting a determination of probable cause. From the very beginning of the chain of information transfer, the type of information is very different from that which was present in *Aguilar.* There, the first link was the transmission of a mere conclusion. 378 US at 113. Here, two chains of information are involved. In one, the first link is the transmission of a statement that the woman living with defendant had personally helped the defendant to break down cocaine. In the other, the statement is that the defendant's brother had seen the defendant take a shot of cocaine. Both statements specified the same date,

July 3, 1974, only three days before the warrant was sought.

In applying to the second part of the *Aguilar* test, we examine the underlying facts and circumstances showing the reliability of the person supplying the information. Once again, the present facts are very different from *Aguilar.* There the information originated from an unnamed informant; the only assurance of reliability regarding the informant himself/herself was the statement that the same informant had given correct information on a previous occasion which was also unspecified. 378 US at 114, n 5. Here the persons who provide the original information are not only named, but in addition, their relationship to the defendant is stated. The relationship of both is such that they would be in an excellent position to know the truth of what they said and such that an ordinary man might well conclude that they were indeed telling the truth.

The second link of the information chain, from the informant to the police officer, is of the more familiar type. However, since the informant here is acting only as a conduit of information, the informational content of what he says has already been examined. This again demonstrates the difference of this case from *Aguilar.* There the transmission of information attempted to bootstrap it to a higher status. Here, facts are merely relayed through several steps; if the information is proper in the first step, it should continue to be so in the second. The second part of the *Aguilar* test is also satisfied; the reliability of the informer, even though unnamed, is established in the more usual way by the recitation of specific prior instances in which the informant had provided correct information.

The Supreme Court has urged that affidavits supporting warrants should be reviewed from a common sense, realistic viewpoint so that the use of warrants will not be discouraged. *United States v Ventresca,* 380 US 102; 85 S Ct 741; 13 L Ed 2d 684 (1965). In our opinion, the preceding discussion is in accord with that spirit. The unusual aspect of this case, the double hearsay element, lends itself to treatment under established rules.[3] The double hearsay information itself here passes muster under those established rules. When that information is read along with the rest of the affidavit, we conclude that the affidavit as a whole does present a judicial officer with the underlying facts and circumstances supporting an independent determination of probable cause. The Fourth Amendment safeguards, as developed in the preceding authorities, are not violated by the issuance of a search warrant based upon probable cause so determined.

Even if constitutional standards are satisfied, it still may be asserted that the warrant was not proper under the pertinent Michigan statute. That statute provides:

---

[3] The Supreme Court noted in *Spinelli* that several steps of hearsay might be present: "Moreover, if the informant came by the information indirectly, he did not explain why his sources were reliable". 393 US at 416. This possibility has been presented to other jurisdictions in situations that are analogous to the instant situation. In *United States ex rel Crawley v Rundle,* 312 F Supp 15 (E D Penn, 1969), habeas corpus relief was denied to a prisoner who challenged, among other things, a search warrant which had been based on information supplied by an unnamed informant to an unnamed police officer who gave it to the police officer who swore to the affidavit. In *People v Horowitz,* 21 NY2d 55; 286 NYS2d 473; 233 NE2d 453 (1967), an arrest was upheld even though the probable cause for it was based on a multiple step chain of information. There the court stated that information possessed by a police department as a whole might be treated differently than other multiple step situations. Special treatment has also been given to information relayed from an anonymous student to a high school assistant principal to the police; the court there noted the special circumstance of information originating outside the criminal milieu. *In Re Boykin,* 39 Ill 2d 617; 237 NE2d 460 (1968).

"Sec. 3. The magistrate's finding of reasonable or probable cause shall be based upon all the facts related within the affidavit made before him. The affidavit may be based upon reliable information supplied to the complainant from a credible person, named or unnamed, so long as the affidavit contains affirmative allegations that the person spoke with personal knowledge of the matters contained therein." MCLA 780.653; MSA 28.1259(3).

The defendant asserts that the informant had no personal knowledge concerning the cocaine, and that the second sentence of the statute infers that such knowledge is a prerequisite to using the informant's information. We do not agree that personal knowledge of the criminal activity itself must be read into the statute. The "personal knowledge" required by the statute is knowledge "of the matters contained *therein*". (Emphasis added.) We interpret these words to mean exactly what they say; the affidavit must set forth affirmative allegations that the informant has personal knowledge of what is contained in the affidavit. Here, the affidavit sets forth the statements which the informant relayed to the police officer. These statements are within the informant's personal knowledge. A judicial officer, upon reading the affidavit, would be presented with information that the judicial officer could weigh to arrive at an independent decision. This is in contrast to an *Aguilar* type situation where the judicial officer is confronted by an informant's statement with no way of knowing whether the statement is based upon personal observation, personal participation, personal knowledge of someone else's statement which, in turn, is based on observation or rumor, etc. Acceptance of such an *Aguilar* statement, with no further information about it, would be an abdi-

cation of the officer's duty to make an independent judgment. *Aguilar, supra.* The preceding statute assures that such information will be presented to a judicial officer in conjunction with allegations showing exactly what it is. If an informant has personal knowledge of a rumor, and that's all, then the statute requires affirmative allegations showing that the informant's personal knowledge is knowledge of a rumor. This statute thus prevents the loss of information, as in *Aguilar,* which may have been reliable; the problem there was that the magistrate had no way of knowing anything about the reliability of the statement. Such should not happen under this statute given its requirement of affirmative allegations of personal knowledge of what is presented for the magistrate's consideration.

The defendant also alleges that it was error for testimony to be introduced which tended to show other criminal activity. The testimony in issue was that of a prosecution witness, a police officer, who referred, among other things, to "pipes smoked for marijuana" as being found in the defendant's apartment during the search. No proper objection was made at trial. On appeal, the defendant must affirmatively show that the unobjected-to testimony deprived defendant of a fair trial. *People v Duncan,* 55 Mich App 403; 222 NW2d 261 (1974), *lv granted,* 393 Mich 773 (1974). No such showing is present here.

Affirmed.