## PEOPLE v WILLIAMS

Docket No. 97724. Submitted March 3, 1988, at Detroit. Decided September 7, 1988. Leave to appeal applied for.

Robert Allen Williams was convicted, following a bench trial, of two counts of first-degree murder and two counts of possession of a firearm during the commission of a felony, Wayne Circuit Court, Charles Kaufman, J. Defendant appealed, alleging that the trial court erred in failing to suppress his statement given to police, in failing to decide whether defendant was a principal offender or an aider and abettor and in failing to grant a new trial based on inadequate assistance of counsel for failure to communicate a plea bargain offer by the prosecution.

The Court of Appeals *held:*

1. The trial court's findings with regard to defendant's statement to the police were not clearly erroneous.

2. The trial court should have decided whether defendant was a principal or an aider and abettor. However, the error was harmless inasmuch as the distinction has been abolished.

3. The plea bargain offer which was not communicated to defendant was conditional and defendant did not show that the conditions could have been eliminated and that he would have accepted the bargain if they had been. Therefore, the trial court's ruling in the matter was proper.

Affirmed.

HOOD, P.J., dissented. He would reverse and remand for a new trial because of counsel's failure to inform defendant of the plea bargain offer.

1. CRIMINAL LAW — CUSTODY TEST — *MIRANDA* WARNINGS.

The "custody test" must be applied in determining whether *Miranda* advice must be given prior to police questioning of a person; custody, for the purpose of deciding whether there has been custodial interrogation by the police, occurs when a person has been deprived of his freedom of action in a mean-

REFERENCES

Am Jur 2d, Criminal Law §§ 167, 168 *et seq.,* 791 *et seq.,* 984 *et seq.*
Adequacy of defense counsel's representation of criminal client regarding plea bargaining. 8 ALR4th 660.

ingful way; the totality of the circumstances must be examined to determine whether a defendant was in custody at the time of police interrogation; the key question is whether the defendant could reasonably believe that he was not free to leave.

2. CRIMINAL LAW — AIDING AND ABETTING — BENCH TRIALS.

   A trial court's failure to decide in a bench trial whether a defendant was guilty as a principal offender or an aider and abettor is harmless inasmuch as the distinction has been abolished (MCL 767.39; MSA 28.979).

3. CRIMINAL LAW — ASSISTANCE OF COUNSEL — PLEA BARGAINS.

   An attorney's failure to communicate a plea bargain offer to his client may constitute ineffective assistance of counsel.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief, Criminal Division, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

*Suzanne Carol Schucke,* for defendant on appeal.

Before: HOOD, P.J., and GILLIS and M. B. BREIGHNER,* JJ.

GILLIS, J. Following a bench trial, defendant was convicted of two counts of first-degree murder, MCL 750.316; MSA 28.548, and two counts of possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). Defendant was sentenced to concurrent mandatory life sentences for the murders to be served consecutively to his mandatory two-year prison sentence for felony-firearm. Defendant moved for a new trial, claiming that one of the two felony-firearm convictions which appeared on his judgment of sentence should be struck, that the trial court did not make specific findings of fact and that defense counsel

* Former circuit judge, sitting on the Court of Appeals by assignment.

was ineffective because he failed to convey a plea bargain offer to defendant. The trial court granted defendant's motion to strike one felony-firearm conviction but otherwise denied defendant's motion. Defendant appeals as of right. We affirm.

In this case, Van Robin Hooper and Charles David Stanley were killed in Hooper's Volvo. Hooper, seated in the driver's seat, was shot four times in the head (i.e., once in the ear, chin, forehead and right side of the head) and once in the neck. All the shots travelled from right to left. Two of the shots were close range (i.e., less than eighteen inches). Stanley, seated in the passenger seat behind Hooper, was shot eight times, four times in the head (once in the ear, chin, temple and eye) and once in each hand, his chest and back. One shot was at close range and two of the wounds may have been reentry wounds. The shots again travelled from right to left. Twelve nine-millimeter casings were found at the scene.

James Scamp, who lived on the road where the bodies were discovered, testified that at approximately 1:10 A.M. on April 6, 1985, he heard four or five back-firing sounds. He then heard a roaring car, gunning its engine. Hooper's Volvo had its rear flashers on, but the other car on the street did not have its lights on. The street was a dead-end street and Hooper's Volvo was facing in the direction of the dead end. Scamp saw that the other car was an older dark-colored two-door Grand Torino with a scoop hood. Scamp observed a person slowly jogging from the passenger side of the Volvo to the passenger side of the Grand Torino. The person had shoulder-length light brown hair and was wearing a thin dark-colored jacket and blue jeans. Scamp believed the person was a female because of the hair, the way the body was proportioned and the jog. Because Scamp saw a white reflection on

the wet pavement, he believed that the person was wearing white-bottomed oxfords or tennis shoes. That person got in the passenger side of the Torino and the Torino drove off without its lights on. Once the Torino reached the main street, its lights came on. The bodies were discovered the next day and, when the police came to Scamp's door, he told them what he had seen.

Defendant first claims that the trial court erred when it failed to suppress an April 10, 1985, statement he gave to the police. Defendant claims that, because he was the focus of the police investigation or was in custody when he gave the statement, he was entitled to be informed of his rights pursuant to *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). Recently, our Supreme Court rejected the focus test and adopted the custody test. *People v Hill,* 429 Mich 382; 415 NW2d 193 (1987). To determine whether the defendant was in custody at the time of the interrogation, the totality of circumstances must be examined. *People v Marbury,* 151 Mich App 159, 162; 390 NW2d 659 (1986). The key question is whether the defendant could have reasonably believed that he was not free to leave. *Hill, supra,* p 399; *Marbury, supra,* p 162. The trial court's decision regarding the admissibility of a statement will not be reversed unless it is clearly erroneous. *Id.* We note that this Court defers to the trial court's superior ability to assess the credibility of the witnesses. *People v Williams,* 163 Mich App 744, 749-750; 415 NW2d 301 (1987).

Detective Sergeant David Early testified that he went to defendant's house because other people he had questioned told him that defendant might have information about the crime. Defendant was sleeping and his mother woke him. When defendant arrived downstairs, Early asked defendant to

accompany him to the station. Defendant agreed. Defendant was probably searched before entering Early's unmarked police car. Defendant was not handcuffed. After questioning defendant, it became clear to Early that defendant may have been involved in the crime. Defendant was arrested and informed of his *Miranda* rights. Defendant waived his rights and continued with his statement. Early was impeached with a computer form which indicated that defendant was arrested at his residence.

Defendant agreed that he accompanied Early and his partner to the police station. Defendant testified that Early told him that he would not be charged because he was just a witness. Defendant testified that he believed he was under arrest when he left his house. Defendant claimed that Early told him that he was under arrest when he left his house.

The court listened to a tape of the conversation between defendant and Early. The court held that defendant was not the focus of the police investigation until he made statements incriminating himself and was not in custody until he was read his rights. We cannot say that the trial court's findings were clearly erroneous. See and compare *Marbury, supra.*

Defendant also claims that the trial court's findings of fact were insufficient because it declined to decide whether defendant was the principal or an aider and abettor. MCR 2.517(A). While the prosecutor argued that defendant was either the principal (i.e., the shooter) or an aider or abettor (i.e., provided the gun and drove the getaway car with knowledge that Mark Sennett intended to kill the victims), defendant claimed that he was merely present when the shootings occurred and did not know that Sennett intended to kill the victims. Because this was a contested matter, the trial

court should have decided whether defendant was the principal or an aider and abettor. MCR 2.517(A)(2). However, in light of the fact that the Legislature abolished the distinction between aiders and abettors and principals, MCL 767.39; MSA 28.979, we believe that any such error is harmless.

Defendant argues that the error is not harmless because it may affect his chances for a commuted sentence. Defendant relies on *People v Norman,* 148 Mich App 273; 384 NW2d 147 (1986). We believe that *Norman* is distinguishable and, therefore, decline to remand for further fact-finding.

Further, defendant claims that the trial court erred when it denied his request for a new trial, given that defense counsel failed to convey a plea bargain offer to him. In an affidavit defense counsel Martin Marcus stated that, at the beginning of trial, the prosecutor offered defendant a plea to second-degree murder with a fifteen-year prison sentence. Marcus stated that he did not relay the offer to defendant because he believed that defendant stood a good chance of acquittal.

At a hearing on the motion for a new trial, defendant testified that, one month before trial, he received an offer to plead to second-degree murder in exchange for a twenty-year sentence. Upon Marcus' advice, defendant declined the offer. Defendant indicated that he told Marcus in the first week he met him that he would accept a plea if the sentence were low enough. Defendant first indicated that he told Marcus that five years would be low enough. Later in his testimony defendant claimed that five, ten or fifteen years would be low enough. At defendant's sentencing, Marcus mentioned a plea bargain, but defendant did not know the details. Defendant at first testified that Marcus may have talked to him in the lockup during trial; however, on rebuttal, defendant testi-

fied that Marcus did not see him in the lockup. Defendant stated that he would have pled guilty to second-degree murder in exchange for a fifteen-year sentence.

Marcus testified that defendant declined to take the first offer. Marcus then testified that on the second day of trial there was a break in the proceedings. Marcus walked over to the prosecutor's table where Mr. Agacinski, the prosecutor, and Early were sitting. Somehow, the discussion concerning a plea came up and Agacinski indicated that a plea to second-degree murder in exchange for a fifteen-year sentence might be possible; however, Agacinski indicated that prosecutor Kenny, his superior, would have to approve such a plea. Then, the judge came back into the courtroom. Marcus could not recall if he had mentioned the offer to defendant, although he conceded that there was sufficient time to do so. Marcus stated that he believed that he had conveyed the offer to defendant but became unsure when defendant acted surprised when he mentioned the offer at sentencing.

Following the first plea offer, Marcus conceded that he had gone to Kenny to see if he could get a better deal for defendant. Kenny refused to lower the original offer, noting that a heinous double homicide was involved. Marcus also conceded that he knew of the prosecutor's policy of not accepting pleas on the day of trial. Marcus further conceded that at the time he signed his affidavit he had forgotten that the offer was made subject to Kenny's approval. He recalled that the offer was conditional after a later conversation with Agacinski. Marcus indicated that he did not recall talking to defendant in lockup and it was not his procedure to do so.

Suzanne Schuelke, appellate counsel for defen-

dant, called for impeachment purposes, testified that she called Marcus in November, 1985. At the time, Marcus told Schuelke that "in the haste and confusion of coming back out and calling Mr. Williams down, he just plain forgot" to tell defendant about the plea offer.

Agacinski testified that, on the first day of trial, the proceedings did not begin at 9 A.M. Agacinski testified that Marcus approached him and asked if anything could be done regarding a plea. Agacinski told Marcus that he did not have the authority to enter into a plea, but would have to check with Kenny. Agacinski told Marcus the best he could get was a fifteen-year sentence for the murders plus two years for the felony-firearm. Agacinski told Marcus that he did not want to talk to Kenny unless defendant was willing to accept such a plea. Marcus left the courtroom and was gone for about ten to fifteen minutes. Marcus returned and told Agacinski that "his man said the numbers were too high." Defendant was brought down from lockup a few minutes later.

The trial court found Marcus' testimony highly suspect, but, in any event, held that there was "never really an offer."

Although the issue has never been decided in Michigan, we agree with the many courts which have held that an attorney's failure to advise his client of a plea bargain offer may be ineffective assistance of counsel. *Williams v Arn,* 654 F Supp 226 (ND Ohio, 1986), vacated but reinstated, 654 F Supp 241 (ND Ohio, 1987), app dis 820 F2d 1226 (1987); *People v Alexander,* 136 Misc 2d 573; 518 NYS2d 872 (1987); *Ex Parte Wilson,* 724 SW2d 72 (Tex Crim App, 1987); *Hanzelka v State,* 682 SW2d 385 (Tex App, 1984); *Young v State,* 470 NE2d 70 (Ind, 1984); *State v Simmons,* 65 NC App 294; 309 SE2d 493 (1983); *Lyles v State,* 178 Ind App 398;

382 NE2d 991 (1978). We further agree that defendant has the burden of proving by a preponderance of the evidence that a plea offer was made and that his counsel failed to communicate it to him. *Alexander, supra; State v Martin,* 318 NC 648; 350 SE2d 63 (1986); *Young, supra.*

In this case, we believe that a conditional offer was made. Because the offer was conditional, we believe that defendant could demonstrate that an offer was made by proving by a preponderance of the evidence that he would have accepted a fifteen-year sentence and that Kenny would have approved the same. Compare *Arn, supra,* where a conditional offer such as the one in this case was conveyed as an unconditional offer, but was revoked before trial; *Simmons, supra,* where defense counsel failed to convey. an unconditional offer because he believed it was conditional and the condition did not occur; *Harris v State,* 437 NE2d 44 (Ind, 1982), where one prosecutor stated that, given the circumstances, it would be appropriate if the defendant could plead guilty to voluntary manslaughter and another prosecutor, without authority to enter a binding plea bargain, asked one co-counsel to check with the other about the possibility of a plea. We find defendant's proof concerning Kenny's approval of the offer lacking. Marcus conceded that Kenny refused to offer less than a twenty-year sentence given the heinous nature of the crimes. At most, Marcus testified that he hoped that Agacinski could convince Kenny to go lower. Thus, we affirm the trial court's opinion as reaching the right result albeit for the wrong reason.

Affirmed.

M. B. BREIGHNER, J., concurred.

HOOD, P.J. *(dissenting).* I respectfully dissent. I

would reverse and remand for a new trial on defendant's second issue, in which defendant claims his counsel did not inform him of a plea offer made by the prosecutor.

The court ordered an evidentiary hearing to determine whether the prosecutor had made an offer to plea which was not communicated to defendant. At this hearing, defendant testified that, some time after trial, defense counsel told him about a plea offer of second-degree murder with a sentence of fifteen years' imprisonment, which had been made before trial. Defendant testified that defense counsel did not inform him of this offer until after trial. Defendant testified that he had told defense counsel early in his prosecution that he would be willing to plead with a five-, ten-, or fifteen-year sentence.

Defense counsel testified that, on the second day of trial, during a break while the judge was out of the courtroom, the prosecutor mentioned to him that defendant could plead guilty to second-degree murder, for fifteen years' imprisonment. When he got back to the defense table, however, the judge entered the courtroom, they were told to rise, and trial proceeded. At first, he did not know whether or not he told defendant about the offer but, later, defendant told him that he had not told defendant. And, he remembered that, at sentencing, he told defendant that "maybe [the] 2nd degree offer that they made during the trial with the 15-year minimum sentence wasn't such a bad idea." Defendant seemed surprised, further indicating to him that he had not previously told defendant.

Suzanne Schuelke, defendant's appellate attorney, testified that, shortly after she took over the file from defense counsel, she called defense counsel and he told her that there had been a plea bargain offer made that he had not communicated

to defendant and that he felt guilty about it and thought she should know about it for appeal purposes. He told her that he "just plain forgot."

The prosecutor testified that, on the first day of trial, defense counsel approached him and asked him if anything could be done as far as getting a plea. He said he had no authority to allow a plea and he would have to talk to his superior at the prosecutor's office. He told defense counsel that the best defense counsel could expect was a sentence of fifteen years. He told defense counsel to ask defendant if he was "willing to take a plea within those large numbers." He testified that defense counsel left the courtroom to talk to defendant and returned ten or fifteen minutes later and said "the numbers were too high." The prosecutor testified that, therefore, "[he] never talked to [his superior] and we never offered a plea."

Defendant testified in rebuttal that defense counsel did not come up to the lockup and tell him about the plea.

The court held that there was no actual offer of a plea. The court felt that it was "just talk, subject to approval of some higherup in the prosecuting attorneys's [sic] office." Thus, the court denied the motion.

I feel that the court erred in finding no offer of a plea. As the court properly noted, an attorney has, as a matter of law, a duty to disclose and discuss with his or her client good faith offers to settle. *Joos v Auto-Owners Ins Co*, 94 Mich App 419, 424; 288 NW2d 443 (1979), lv den 408 Mich 946 (1980). When the prosecutor told defense counsel to ask defendant whether he would be willing to plead guilty in exchange for a fifteen-year sentence, an offer was made about which defendant was entitled to know. Although there are no cases on point

in Michigan, other jurisdictions have held that a defendant is entitled to a new trial where defense counsel failed to communicate a plea bargain to him. See *Lyles v State,* 178 Ind App 398; 382 NE2d 991 (1978); *State v Simmons,* 65 NC App 294; 309 SE2d 493 (1983); *Hanzelka v State,* 682 SW2d 385 (Tex App, 1984). I feel that this rule is a sound one and should be adopted in Michigan. This rule is consistent with the principle that it is the defendant's right to choose whether or not to plead guilty. See *Boykin v Alabama,* 395 US 238, 242-244; 89 S Ct 1709; 23 L Ed 274 (1969); *Brookhart v Janis,* 384 US 1, 7; 86 S Ct 1245; 16 L Ed 2d 314 (1966). Defendant was entitled to hear the plea offer and decide whether he would accept it. Defendant was prejudiced by defense counsel's failure to communicate the plea offer to him.

I do not feel that the fact that the plea had to be approved by the prosecutor's superior should warrant a different result. Because it cannot be determined at this point whether the superior would have approved the plea, defendant is entitled to a new trial.