PEOPLE v MAYES (AFTER REMAND)

Docket No. 112076. Submitted February 16, 1993, at Lansing. Decided
    October 19, 1993, at 9:15 A.M.

Wilford L. Mayes pleaded guilty in the Kalamazoo Circuit Court,
    Philip D. Schaefer, J., of carrying a concealed weapon. The plea
    was offered in exchange for the prosecution's recommendation
    of probation. The defendant was sentenced to probation and
    appealed, arguing that he was entitled to withdraw his plea on
    the basis of ineffective assistance of counsel. The Court of
    Appeals denied the defendant's motion for remand for an
    evidentiary hearing on the basis that the motion was not
    timely. In lieu of granting leave to appeal, the Supreme Court
    reversed the Court of Appeals order denying the motion to
    remand and remanded the case to the Court of Appeals with
    instructions that the Court of Appeal, while retaining jurisdic-
    tion, remand the matter to the trial court for an evidentiary
    hearing concerning the claim of ineffective assistance of coun-
    sel. 433 Mich 894 (1989). On remand, the trial court found that
    the defendant had not been denied effective assistance of coun-
    sel and denied the defendant's motion to withdraw his plea.

    The Court of Appeals *held:*

    The defendant asserted that ineffective assistance of counsel
    resulted from trial counsel's failure to challenge the search of
    the automobile in which the gun was discovered on the basis
    that it was a constitutionally prohibited search without a
    warrant and to challenge the admissibility of a statement made
    by the defendant on the basis that it resulted from impermissi-
    ble custodial interrogation. Because each of the asserted defen-
    ses was tenuous in nature, it cannot be said that trial counsel
    failed to provide the defendant with advice within the range of
    competence demanded of defense counsel in criminal cases
    when he advised the defendant to accept the proffered plea
    bargain. The defendant received effective assistance of counsel.

    Affirmed.

    CORRIGAN, P.J., concurring, stated that the trial court was
    correct in its conclusion that the defendant failed to establish
    that he was denied effective assistance of counsel. Because of
    the defendant's desire to avoid any jail time and the fact that
    dismissal of the charge on the basis of the asserted constitu-

tional defenses was anything but certain, trial counsel's advice to take the plea bargain cannot be considered to be a serious mistake amounting to ineffective assistance of counsel.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *James J. Gregart,* Prosecuting Attorney, and *Dale S. Murney,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Jack Van Coevering*), for the defendant.

### AFTER REMAND

Before: CORRIGAN, P.J., and SHEPHERD and MC-DONALD, JJ.

PER CURIAM. On May 2, 1988, defendant pleaded guilty of carrying a concealed weapon, MCL 750.227; MSA 28.424, in exchange for the prosecutor's agreement to recommend that he receive two years' probation. As a factual basis for his plea, defendant stated that on March 28, 1988, he had put a gun inside the car that his sister had used to drive them to school. On June 13, 1988, defendant was sentenced to two years of probation.

Defendant then appealed as of right, arguing that he was entitled to withdraw his guilty plea on the basis of ineffective assistance of counsel because his trial counsel had failed to raise two meritorious defenses based upon Fourth and Fifth Amendment grounds before he had entered his guilty plea. On June 22, 1989, this Court denied, as untimely, defendant's motion to remand for the purpose of conducting an evidentiary hearing relative to his claim of ineffective assistance of counsel. However, on October 24, 1989, our Supreme Court issued an order reversing this Court's order

and remanding this case to the circuit court for a *Ginther* hearing.[1] 433 Mich 894 (1989).

On February 13, 1990, the circuit court held a *Ginther* hearing. After finding that defendant had not been denied effective assistance of counsel, the trial court denied defendant's motion to withdraw his guilty plea. We affirm.

I

When reviewing a claim of ineffective assistance of counsel arising out of a guilty plea, courts apply the test set forth in *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984), in light of the guidance set forth in *McMann v Richardson,* 397 US 759; 90 S Ct 1441; 25 L Ed 2d 763 (1970), and *Tollett v Henderson,* 411 US 258; 93 S Ct 1602; 36 L Ed 2d 235 (1973). *In re Oakland Co Prosecutor,* 191 Mich App 113, 120-122; 477 NW2d 455 (1991). To establish ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that, under an objective standard of reasonableness, counsel made an error so serious that counsel was not functioning as an attorney as guaranteed under the Sixth Amendment. Moreover, the defendant must overcome the presumption that the challenged action might be considered sound trial strategy. Additionally, the deficiency must be prejudicial to the defendant. *People v Tommolino,* 187 Mich App 14, 17; 466 NW2d 315 (1991).

To establish ineffective assistance of counsel in the context of a guilty plea, courts must determine whether the defendant tendered a plea voluntarily and understandingly. *Oakland Prosecutor, supra,* p 120. The question is not whether a court, in retrospect, would consider counsel's advice to be right

---

[1] *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973).

or wrong, but whether the advice was within the range of competence demanded of attorneys in criminal cases. *Id.,* p 122.

II

In support of his claim of ineffective assistance of counsel, defendant claims that his trial counsel failed to raise two valid constitutional defenses under the Fourth and Fifth Amendments to the charge of carrying a concealed weapon. First, defendant maintains that there was no probable cause to conduct a search without a warrant of the automobile in which the gun was found.

The Fourth Amendment is not a guarantee against all searches and seizures, only unreasonable ones. *United States v Sharpe,* 470 US 675, 682; 105 S Ct 1568; 84 L Ed 2d 605 (1985); *People v Armendarez,* 188 Mich App 61, 66; 468 NW2d 893 (1991). Generally, a search conducted without a warrant is unreasonable unless there exist both probable cause and a circumstance establishing an exception to the warrant requirement. *People v Reed,* 393 Mich 342, 362; 224 NW2d 867 (1975); *People v Anthony,* 120 Mich App 207, 210; 327 NW2d 441 (1982). When a search is conducted without a warrant, the state bears the burden of showing that the search was justified by a recognized exception to the warrant requirement. *Reed, supra; People v Wade,* 157 Mich App 481, 485; 403 NW2d 578 (1987).

Here, the prosecutor argues that the search of the automobile without a warrant was justified under the automobile exception, see *United States v Ross,* 456 US 798, 807-808; 102 S Ct 2157; 72 L Ed 2d 572 (1982); *People v Anderson,* 166 Mich App 455, 478-479; 421 NW2d 200 (1988), and also because of exigent circumstances, see *Zurcher v*

*Stanford Daily,* 436 US 547, 556; 98 S Ct 1970; 56 L Ed 2d 525 (1978); *People v Blasius,* 435 Mich 573; 459 NW2d 906 (1990). However, before either of these exceptions may apply, there must first exist probable cause to believe that contraband or evidence of a crime may be found in the stated location. *Ross, supra; Blasius, supra.* It is defendant's contention that he received ineffective assistance of counsel because counsel failed to argue that the circumstances did not establish probable cause to conduct the search of the automobile without a warrant.

Although we agree with defendant that an argument could be made that the search of the car was improper for lack of probable cause, we are not convinced that defendant would have prevailed on that issue. If the trial court had decided to uphold the validity of the search and admit the confiscated gun and defendant's confession into evidence, the case against defendant would have been very strong indeed. Thus, weighing the relative risks of jail time versus the offer of probation, we are not convinced that the ultimate advice to plead guilty in return for two years' probation constituted ineffective assistance of counsel. *Oakland Prosecutor, supra,* p 124.

We will first consider whether there was probable cause for the search of the car where the gun was found. In determining whether there is probable cause to believe that contraband or evidence is located in a specific place, the United States Supreme Court set forth in *Illinois v Gates,* 462 US 213, 238; 103 S Ct 2317; 76 L Ed 2d 527 (1983), a "totality of the circumstances" standard:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affida-

vit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

The Court in *Gates* further remarked:

A sworn statement of an affiant that "he has cause to suspect and does believe" . . . will not do. . . . An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause . . . . *An officer's statement that "[a]ffiants have received reliable information from a credible person and do believe" that heroin is stored in a home, is likewise inadequate. . . .* [T]his is a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause. . . . [H]is action cannot be a mere ratification of the bare conclusions of others. [*Id.* at 239. Emphasis added.]

In *United States v Blackman,* 897 F2d 309, 314 (CA 8, 1990), we note that the Eighth Circuit Court of Appeals held that the *Gates* "totality of circumstances" rationale was equally applicable in determining probable cause to conduct a search of an automobile without a warrant pursuant to the automobile exception.

Applying the *Gates* standard to the facts adduced at the evidentiary hearing in this case, we must agree with defendant that there is a colorable argument that there was no probable cause to conduct a search of the automobile without a warrant.

Here, the extent of the information known to the police officer at the time of the search was that an unidentified student informant had reported that defendant had brought a handgun to school and that the gun was inside a blue Buick or

Oldsmobile. No facts were disclosed concerning the informant's veracity, reliability, or basis of knowledge. While, under *Gates,* the absence of these factors is not fatal per se to the determination of probable cause, here the police officer simply was not furnished with any other objective facts from which to infer that a gun could be found in the automobile.

Contrary to the prosecutor's contention, the existence of probable cause cannot be said to have been established on the basis that the police officer confirmed the reliability of the informant's information through an independent investigation by ascertaining that a blue Buick or Oldsmobile in the school parking lot was registered to defendant's mother.

In *Alabama v White,* 496 US 325, 331-332; 110 S Ct 2412; 110 L Ed 2d 301 (1990), the United States Supreme Court discussed whether an anonymous tip received by the police was sufficiently corroborated to provide the less demanding "reasonable suspicion" needed to justify an investigatory stop. There, the Court noted:

> The Court's opinion in *Gates* gave credit to the proposition that because an informant is shown to be right about some things, he is probably right about other facts that he has alleged . . . . Thus, it is not unreasonable to conclude in this case that the independent corroboration by the police of significant aspects of the informer's predictions imparted some degree of reliability to the other allegations made by the caller.
>
> We think it also important that, as in *Gates,* "the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted." . . . *The fact that the officers found a car precisely matching the caller's description in front*

*of the 235 building is an example of the former. Anyone could have "predicted" that fact because it was a condition presumably existing at the time of the call. What was important was the caller's ability to predict* future behavior, *because it demonstrated inside information—a special familiarity with respondent's affairs.* [Emphasis added.]

In this case, the information provided by the informant did not contain a range of details, but rather noted that defendant allegedly had brought a gun to school and gave a general description of the automobile in which the gun could be found. The only information that was corroborated by the police officer was the informant's description of the car, which represents the type of information determined in *White* to be of less significance, because it relates only to the condition existing at the time of the tip and fails to demonstrate "inside information" or "special familiarity" with defendant's affairs.

We are also not convinced that probable cause was established because an assistant principal had furnished reliable information in the past. Although it is undisputed that the information provided by the assistant principal was obtained from a student informant, the assistant principal did not provide any objective facts bearing on the veracity, reliability, or basis of knowledge of the informant.

In view of the "totality of circumstances," this case is not very different from the example mentioned in *Gates,* where an officer's belief that he has received reliable information from a credible person that heroin is stored in a home is inadequate to establish probable cause. Accordingly, defense counsel could have pursued the argument that there was no probable cause to justify the search of the automobile without a warrant.

On the other hand, to forgo the plea agreement and pursue this constitutional issue would not have been without risks. It is unclear how the trial court would have decided the probable cause issue under the totality of the circumstances. *Gates, supra.* And, there is some authority for a different approach—an approach that balances the privacy interests of children with the need of school officials to maintain order—when such a search takes place in a school setting, as here. See the plurality decision in *New Jersey v T L O,* 469 US 325, 343; 105 S Ct 733; 83 L Ed 2d 720 (1985); see also *State v Farrer,* 57 Wash App 207; 787 P2d 935 (1990); *Shamberg v State,* 762 P2d 488 (Alaska App, 1988); *People in interest of P E A,* 754 P2d 382 (Colo, 1988). So, while defense counsel certainly could have attempted to argue that the search was improper, there is also much uncertainty whether defendant would have prevailed. Thus, a competent attorney might have decided to forgo this argument in favor of a plea agreement.

Defendant also claims that he was denied effective assistance of counsel in that defense counsel failed to raise the argument that defendant's statements made during the custodial interrogation were inadmissible because he had not been given *Miranda*[2] warnings. However, again, we are not convinced that counsel was necessarily ineffective for failing to argue this issue, because the issue could have gone either way.

The right against self-incrimination is guaranteed by both the United States and Michigan Constitutions. US Const, Am V; Const 1963, art 1, § 17. The Michigan constitutional provision is construed no more liberally than the federal guaran-

---

[2] *Miranda v Arizona,* 484 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

tee. *People v Burhans,* 166 Mich App 758, 761; 421 NW2d 285 (1988).

Statements of an accused made during custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waived his Fifth Amendment rights. *Miranda v Arizona,* 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966). Warnings required under *Miranda* must be given when a person is in custody or otherwise deprived of freedom of action in any significant manner. *People v Hill,* 429 Mich 382, 384; 415 NW2d 193 (1987). The totality of the circumstances must be examined to determine whether the defendant was in custody at the time of the interrogation. *People v Williams,* 171 Mich App 234, 237; 429 NW2d 649 (1988). The key question is whether the accused reasonably could have believed that he was not free to leave. *Id.*

Here, the undisputed facts adduced at the evidentiary hearing indicate that defendant, a senior, was summoned to the principal's office at his school and was greeted by the police officer, who frisked him for weapons. Thereafter, without advising defendant of his *Miranda* rights, the officer questioned defendant regarding whether he had brought a gun to school. After the gun was produced, defendant admitted that it was his. Although, the police officer testified that defendant was free to leave at any time, there was no evidence that this message was conveyed to defendant. These facts could support a finding that defendant reasonably believed that he was not free to leave. *Williams, supra,* p 237.

On the other hand, no one ever told defendant that he was under arrest, and he was permitted to leave the principal's office after being questioned. The detention was brief and occurred in a school principal's office rather than at the police station

or a squad car. Thus, the questioning was noncus-
todial, and the environment was not "police domi-
nated." See *Berkemer v McCarty,* 468 US 420; 104
S Ct 3138; 82 L Ed 2d 317 (1984).

Considering the totality of the circumstances,
one could make an argument that defendant was
effectively under arrest. However, we are not con-
vinced that defense counsel was ineffective for
failing to argue that defendant's confession should
have been suppressed, because it is unclear
whether defendant would have prevailed on the
issue.

III

Given that defendant had two potential constitu-
tional defenses to the charge of carrying a con-
cealed weapon, the question is whether defendant
was entitled to withdraw his guilty plea because it
was not made voluntarily and understandingly.
*Oakland Prosecutor, supra.*

At the *Ginther* hearing, Mr. Narragan, defen-
dant's trial counsel, testified that he met with
defendant and his parents on the day of the pre-
liminary examination. After reviewing the police
report with them, he discussed the purpose of the
preliminary exam and informed them of a pro-
posed plea agreement.

According to both defendant and his mother,
defense counsel instructed defendant to plead
guilty because he had no defenses. Defense counsel
disputed this contention, claiming that he "spoke
to" defendant about "potential issues" with regard
to both the search and the admissions. Further,
defense counsel stated that the "total focus" of his
discussions was that defendant avoid jail. How-
ever, defense counsel admitted that he never gave
defendant a legal opinion regarding whether any

defenses were valid or should be raised and that it
was his own personal opinion "that the procure-
ment of the weapon and the investigatory proce-
dures of the township were proper." Moreover, we
note that at the evidentiary hearing, defense coun-
sel acknowledged that he had characterized inac-
curately the search of defendant's parked car as a
stop of a moving vehicle in a prior written re-
sponse to the Attorney Grievance Commission. He
also stated in his response to the grievance com-
mission that there was more than one informant,
even though this was not reflected in the police
report.

It appears that defense counsel did not thor-
oughly discuss the potential merits of the constitu-
tional issues with defendant and his family.[3] De-
fense counsel apparently glossed over the constitu-
tional issues, which appear to us to be complex
and troublesome. However, in light of the tenuous
nature of the constitutional defenses that could
have been argued, we are not convinced that de-
fense counsel failed to provide defendant with
advice within the range of competence demanded
of attorneys in criminal cases so as to enable
defendant to make an informed choice whether to
plead guilty. Considering the risk of jail time and
the strength of the evidence against defendant if
admitted, we cannot say that defense counsel acted
incompetently in ultimately advising defendant to
take the plea bargain for probation. *Oakland Pros-
ecutor, supra,* pp 124-125. Defendant received effec-
tive assistance of counsel.

Affirmed.

---

[3] We note that even the trial court acknowledged that "there is no
question but what (sic) there are Fourth and Fifth Amendment issues
that undoubtedly any law school graduate, or perhaps, for that
matter, any first-year law student might identify . . . and [trial
counsel] maybe didn't verbalize all those considerations to the defen-
dant or his family."

CORRIGAN, P.J. *(concurring).* I concur in the majority's conclusion that the defendant received the effective assistance of counsel. I write separately to highlight additional facts and provide some alternative analysis.

Pursuant to *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973), the court conducted a hearing on remand concerning defendant's claim of ineffective assistance of counsel. After evaluating the testimony of four witnesses, the court denied defendant's motion. In reviewing a claim of ineffective assistance, we apply a highly deferential standard so as to avoid second-guessing counsel's conduct. Further, we measure counsel's behavior under prevailing professional norms to determine whether it was reasonable under all the circumstances. *Tollett v Henderson,* 411 US 258; 93 S Ct 1602; 36 L Ed 2d 235 (1973). *In re Oakland Co Prosecutor,* 191 Mich App 113; 477 NW2d 455 (1991). Applying *Tollett* standards, the court's findings were proper.

Defendant did not overcome the presumption that his lawyer's advice fell within the range of reasonable competence. The testimony at the *Ginther* hearing revealed that the Kalamazoo County prosecutor does not engage in the form of guilty plea negotiation known as charge bargaining. The prosecutor does, however, engage in sentence bargaining. Prosecutors make their best offers at the preliminary examination; any unaccepted offer is immediately withdrawn. As the case progresses, the plea offers become increasingly less generous. At the time of preliminary examination in Kalamazoo County, defense counsel must evaluate the client's case and determine whether to risk filing motions and trying the case or whether to recommend the most favorable plea agreement the client is ever likely to receive.

In this case, at the time of the preliminary

examination, after negotiations with defense counsel, the prosecutor agreed to recommend probation and to remain silent regarding incarceration, the best possible offer that defendant could have obtained on the pending weapons charge. The court on remand stated that the offer would have signaled the court that the people had no interest in a jail sentence. Realistically, defendant otherwise faced the prospect of a six-month jail term. The record before us shows that gang violence was on the upswing in Kalamazoo, and a defendant connected with gang activity who was caught with a gun on school premises typically would receive a six-month jail term. Although defendant denied membership in a gang, his alleged motive for carrying the gun to school was to protect himself from a gang that had been harassing him. A sentencing court could well decide, on these and additional proofs, that a six-month sentence was in order.

Counsel talked with defendant about potential issues relating to the search and the defendant's admission that he owned the seized weapon. Counsel believed that the township's investigative procedures and seizure of the weapon were proper. Defendant testified that in response to his question about the legality of the search, counsel had advised him that the search was legal.[1]

---

[1] The defendant testified that he discussed the merits of his search issue with counsel:

> Q. Did you ask him anything about the search in the interview with him.
> A. Yes. He said it was a valid search.
> Q. What did you ask him?
> A. I said, "Couldn't that be considered an illegal search by the police?"
> He said, no, because they had information, valid information, and that since it was on school property, that the search was legal.

The court credited defense counsel's testimony that the defendant's primary interest was avoiding jail. The court found that the case presented Fourth and Fifth Amendment issues that any first-year law student might identify. Against those issues, counsel had to weigh a guaranteed sentence of probation without incarceration.

The tenor of the court's reasoning at the hearing strongly suggests that it would have found the search legal and the interrogation noncustodial if counsel had filed motions in defendant's behalf. Thus, defendant would in all likelihood have served a six-month jail term before his appeal could have been heard. Even so, he might not have prevailed on appeal. A competent defense attorney may certainly counsel his client that although he may ultimately prevail on a "good issue," the client could very well have served his entire jail term before the appeal can be heard.

If the client's primary interest is in avoiding incarceration, a competent lawyer may safely counsel the client to plead guilty and be sentenced to probation rather than urge that client to file pretrial motions where the outcome is not at all clear. Such representation does not run afoul of the Sixth Amendment.

The circuit court also considered whether, but for counsel's failure to identify those issues, the case would have resulted in dismissal. I adopt and endorse the court's reasoning. In my view, the constitutional issues were not obviously likely to have resulted in the case being dismissed.

## I. *MIRANDA* ISSUE

The question whether defendant was subjected

to custodial interrogation and *Miranda*[2] warnings were required is certainly not free from doubt. The triggering mechanism for the duty to furnish *Miranda* warnings is custody, not focus. *People v Hill,* 429 Mich 382; 415 NW2d 193 (1987). The duty to give *Miranda* warnings attaches when a defendant is in custody or otherwise deprived of freedom of action in any significant way. *Miranda, supra.* The obligation does not extend to general "on the scene" questioning as to facts surrounding the crime.

Courts are less willing to find custodial circumstances where interrogation occurs in familiar or neutral surroundings. Thus, interrogation in a suspect's home is usually viewed as noncustodial. *Beckwith v United States,* 425 US 341; 96 S Ct 1612; 48 L Ed 2d 1 (1976). As the Court recognized in *Minnesota v Murphy,* 465 US 420, 433; 104 S Ct 1136; 79 L Ed 2d 409 (1984), a suspect in familiar surroundings does not face the same pressures as a suspect in the police-dominated atmosphere of the station house:

> Custodial arrest is said to convey to the suspect a message that he has no choice but to submit to the officer's will and to confess. . . . Many of the psychological ploys discussed in *Miranda* capitalize on the suspect's unfamiliarity with the officers and the environment. . . . [T]he coercion inherent in custodial interrogation derives in large measure from an interrogator's insinuations that the interrogation will continue until a confession is obtained.

The comparatively nonthreatening character of this detention would justify a holding that the defendant was not in custody. See also *Berkemer v*

---

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

*McCarty,* 468 US 420; 104 S Ct 3138; 82 L Ed 2d 317 (1984). It is not obvious that a student who is called to the school principal's office, frisked for weapons, and briefly questioned cannot be questioned without *Miranda* warnings. The officer here told defendant that he was investigating a weapons offense. Upon defendant's inquiry, "What weapon?" the officer showed defendant the gun. Defendant immediately blurted out that he owned the gun. Just as in *Berkemer,* the detention was brief, no trickery was used to elicit a confession, and the atmosphere was not "police-dominated." 468 US 438, n 27.

Moreover, the defendant was never formally arrested. He was permitted to leave the principal's office and go about his business. Defendant was not deprived of his freedom of movement to the degree associated with a formal arrest. *New York v Quarles,* 467 US 649; 104 S Ct 2626; 81 L Ed 2d 550 (1984). It is not obvious that the officer had a duty to furnish *Miranda* warnings.

## II. SEARCH IN THE HIGH SCHOOL PARKING LOT

The more serious issue, the Fourth Amendment issue, is not easy to resolve. I cannot conclude, however, that defendant was likely to have obtained a dismissal on the search and seizure issue.

### A. STANDING

As a preliminary matter, defendant may well lack any standing to object to the search of his mother's car and the seizure of the weapon therein. He was not present in the car when it was searched. A passenger who is not present lacks standing to object to a later search of the car. *People v Jackson,* 71 Mich App 487; 247 NW2d

382 (1976). Nor does a nonowner ordinarily have standing to challenge a search, unless he pleads and proves some expectation of privacy in the vehicle. *People v Nelson,* unpublished opinion per curiam of the Court of Appeals, decided August 13, 1992 (Docket No. 139042), rev'd on other grounds 443 Mich 626; 505 NW2d 266 (1993).

Defendant might attempt to assert standing because the car searched was the family car. In my view, he could not prevail on this bare assertion. Instead, he must plead and prove his own expectation of privacy in the vehicle. The vehicle searched belonged to his mother. On the day in question, she had loaned it not to defendant, but to his sister. If a vehicle is repeatedly used by a family member, standing may be established. See, e.g., *State v Johnson,* 598 SW2d 123 (Mo, 1980); *State v Morrill,* 197 Conn 507; 498 A2d 76 (1985); *People v Johnson,* 114 Ill 2d 170; 499 NE2d 1355 (1986). In *Johnson,* the Illinois court concluded that the defendant lacked standing because he could not prove his continuous use of and right of access to the family car.

Under these standards, the standing issue is certainly litigable. I question whether defendant could meet his burden of proof. See, generally, 4 Lafave, Search and Seizure (2d ed), § 11.3(E), pp 322-341.

### B. QUANTUM OF CAUSE FOR VEHICLE SEARCH IN SCHOOL PARKING LOT

Assuming defendant has standing, the search question is further complicated because defendant brought a gun onto school property. The situation presented is certainly among the most exigent imaginable. The immediate danger far exceeds that presented in most types of anonymous in-

former cases. Further, neither the student who was the source of the anonymous tip nor the principal was an informant from the criminal milieu. To the extent they are still relevant, ordinary *Aguilar-Spinelli*[3] standards would not apply either to the principal or to the anonymous student informer. See *People v Powell,* 201 Mich App 516; 506 NW2d 894 (1993), and cases cited therein. In any event, the officer testified that the principal had a one hundred percent track record of past accuracy in reporting the presence of guns in school.

In *Illinois v Gates,* 462 US 213; 103 S Ct 2317; 76 L Ed 2d 527 (1983), the United States Supreme Court reaffirmed the use of the totality of the circumstances test for probable cause and rejected the two-pronged *Aguilar-Spinelli* test as excessively technical. Assuming that the *Gates* test applies in these circumstances, the question whether the totality of the circumstances establishes probable cause to search is certainly not free from doubt.

The proper approach to analysis of anonymous tips in a school setting appears in *In re Boykin,* 39 Ill 2d 617; 237 NE2d 460 (1968), where an anonymous student informant told the assistant principal that another student had a gun. The principal immediately contacted the police. Two police officers entered the school, searched the student, and seized a gun concealed on his person. The Illinois court decided that the police were not required to wait to ascertain whether the informer's identity was unknown or the assistant principal had merely said that he was anonymous to avoid future problems:

---

[3] *Aguilar v Texas,* 378 US 108; 84 S Ct 1509; 12 L Ed 723 (1964); *Spinelli v United States,* 393 US 410; 89 S Ct 584; 21 L Ed 2d 637 (1969).

[T]hey were not required to delay until they had
ascertained whether the informant was in fact
anonymous or whether the assistant principal said
that he was in order to avoid future difficulties in
the school and the creation of a feud. (See *Kent v
United States,* 383 US 541; 86 S Ct 1045; 16 L Ed
2d 84 [1966].) In this case, moreover, there is a
complete absence of any possible element of gain
to the anonymous informant from furnishing false
information, and the nature of the potential dan-
ger differs from that involved in gambling and
narcotics cases. (See, *People v Taggart,* 20 NY2d
335, 339; 283 NYS2d 1; 229 NE2d 581, 584 [1967].)
The appropriate person to appraise that danger
was the school official who is required to maintain
discipline and to act "for the safety and supervi-
sion of the pupils in the absence of their parents
and guardians." Ill Rev Stat 1967, chap 122, par
34-84a. [39 Ill 2d 619].

*Boykin* was cited favorably in *People v Chartrand,*
73 Mich App 645, 652, n 3; 252 NW2d 569 (1977),
where this Court noted that information originat-
ing from a high school student and relayed to an
assistant principal and then to the police falls
outside the criminal milieu (and is thus not gov-
erned by *Aguilar-Spinelli* standards). Applying a
"totality of circumstances" test, I cannot conclude
that the resolution of the search issue would have
led to dismissal of the case, if traditional probable
cause is the required quantum of proof.

However, in a school setting, searches may be
conducted on a reduced quantum of cause. In *New
Jersey v T L O,* 469 US 325, 343; 105 S Ct 733; 83
L Ed 2d 720 (1985), the United States Supreme
Court, in a plurality opinion, recognized that a
different standard governs Fourth Amendment ac-
tivity in the nation's schools. The "school search"
exception has not been limited to searches of
students' persons or their lockers. Several lower

courts have extended the *TLO* rationale to searches of students' cars in parking lots. See, e.g., *State v Farrer,* 57 Wash App 207; 787 P2d 935 (1990); *Shamberg v State,* 762 P2d 488 (Alaska App, 1988); *People in interest of PEA,* 754 P2d 382 (Colo, 1988). In *TLO,* the Court reasoned that although searches must ordinarily be based upon probable cause, probable cause is not an irreducible requirement of a valid search. Instead, the plurality concluded that the fundamental command of the Fourth Amendment is that searches and seizures be reasonable. The Court employed the test adopted in *Camara v Municipal Court,* 387 US 523; 87 S Ct 1727; 18 L Ed 2d 930 (1967), balancing the privacy interests of school children with the need of teachers and administrators for freedom to maintain order in the school. Probable cause is not the controlling quantum of proof for vehicle searches in school parking lots where student safety is the paramount concern.

In the *TLO* case, the Supreme Court did not resolve the question of the appropriate standard where searches on school premises are conducted in conjunction with or at the behest of law enforcement agencies. *TLO, supra,* p 341, n 7. Under *TLO,* the assistant principal, acting alone, plainly could have searched defendant's mother's car. The police officer here seemed to be acting in exigent circumstances, not on his own initiative, but at the behest of school officials. However, the quantum of cause required for searches on school premises certainly should not shift depending on the identity of the searcher, if the police did not initiate the search. The record reflects that the assistant principal and the police officer had just fifteen minutes before the school lunch hour would begin. Because Kalamazoo Central High School has an open campus policy, at lunch time many

juniors and seniors can leave the high school campus. At lunch time, defendant would have had easy access to the weapon. If the assistant principal and the police officer had failed to act, their omissions could have threatened the security and safety of the students committed to their temporary care. Although the intrusion into the car was significant, on balance, the need to search was even greater. The search in question in all likelihood met the Fourth Amendment's command of reasonableness.

In any event, the resolution of this issue is not obviously in defendant's favor. Accordingly, defense counsel did not make a serious mistake in advising his client to accept the prosecutor's excellent plea offer and forgo further challenges.

I concur in affirming defendant's conviction.