# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 20, 2017

Plaintiff-Appellee,

v

No. 333056
Eaton Circuit Court
LC No. 15-020380-FH

DANNY DEWAYNE WALLER,

Defendant-Appellant.

Before: MARKEY, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his convictions after a jury trial of using a computer to commit a crime, MCL 752.796 and MCL 752.797(3)(d), and possession of child sexually abusive material, MCL 750.145c(4). The trial court sentenced defendant as a fourth offender, MCL 769.12, to 10 to 25 years' imprisonment for using a computer to commit a crime and to 10 to 15 years' imprisonment for possession of child sexually abusive material. We affirm.

This case arises from a search of defendant's residence that resulted in the discovery of 34 photographs of nude children on a tablet computer. Defendant was on parole and living alone in a residence provided by the Michigan Department of Corrections (MDOC). As part of the terms of his parole, defendant was prohibited from using a device capable of connecting to the internet. Defendant's parole supervisor was informed that defendant had been using a tablet computer in a waiting room. Accordingly, he went to defendant's residence to investigate, searched defendant's bedroom, and discovered a tablet computer and charging device under the covers of defendant's bed.

When questioned about the tablet, defendant informed the parole supervisor that a former resident of the MDOC home owned the tablet. Another parolee had lived in the residence with defendant for a short time but was arrested and "locked up again." Before his arrest, he gave defendant the passcode and permission to use the tablet. Defendant admitted to using the tablet, to being aware that it contained "two pornographic movies" when he borrowed it, and that he had "downloaded other stuff" onto the tablet. A subsequent forensic evaluation revealed that the tablet computer had 34 photographs depicting adolescents in various poses and stages of undress.

Defendant first argues that the prosecutor offered insufficient evidence to convict him of possession of child sexually abusive material or using a computer to commit a crime. We disagree.

-1-

This Court reviews claims of insufficient evidence de novo. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). Any conflict in the evidence must be resolved in favor of the prosecution. *People v Terry*, 224 Mich App 447, 452; 569 NW2d 641 (1997).

To comport with due process, the prosecution must establish a defendant's guilt of each essential element of a criminal charge beyond a reasonable doubt. *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999). Circumstantial evidence and reasonable inferences arising therefrom are sufficient to support a criminal conviction. *Nowack*, 462 Mich at 400.

MCL 750.145c(4) provides, in relevant part, that a person is guilty of possession of child sexually abusive material when "[a] person [] knowingly possesses or knowingly seeks and accesses any child sexually abusive material . . . ." Defendant argues that there was insufficient evidence to establish the knowing possession element because he did not have exclusive use of or control over the tablet computer. "Possession can be established with circumstantial or direct evidence, and the ultimate question of possession is a factual inquiry to be answered by the jury." *People v Flick*, 487 Mich 1, 14; 790 NW2d 295 (2010) (citation and quotation marks omitted). Further, possession may be established without exclusive dominion or control over the object. *Id*. at 14, citing *People v Konrad*, 449 Mich 263, 271; 536 NW2d 517 (1995).

The evidence established that the photographs were stored on a tablet computer found in defendant's residence, in defendant's bed. There was evidence that it was passcode protected and that defendant knew the passcode. In addition, defendant admitted to using the tablet, to being aware that it contained "two pornographic movies," and to downloading "other stuff" onto the tablet. Moreover, the prosecutor presented evidence that some of the photographs were downloaded during a time when only defendant lived in the residence and had access to the tablet. Thus, although the former resident may have also had access to the tablet, when viewing this evidence and reasonable inferences in the light most favorable to the prosecution, a rational finder of fact could determine beyond a reasonable doubt that defendant knowingly possessed the photographs that were stored on the tablet.

Defendant also argues that there was insufficient evidence to establish that the photographs constituted child sexually abusive material because they depicted only nudity, rather than erotic nudity. "Child sexually abusive material" is defined as "any depiction, whether made or produced by electronic, mechanical, or other means, . . . which is of a child or appears to include a child engaging in a listed sexual act . . . ." MCL 750.145c(o). The listed sexual acts include "sexual intercourse, erotic fondling, sadomasochistic abuse, masturbation, passive sexual involvement, sexual excitement, or erotic nudity." MCL 750.145c(*i*). At trial, both parties stated that erotic nudity was the only listed sexual act relevant to the photographs at issue. Innocent or benign child nudity may not amount to "erotic nudity." *People v Riggs*, 237 Mich App 584, 590-592; 604 NW2d 68 (1999). Erotic nudity is defined as "the lascivious exhibition of the genital, pubic, or rectal area of any person. As used in this subdivision, 'lascivious' means wanton, lewd, and lustful and tending to produce voluptuous or lewd emotions." MCL 750.145c(h).

In this case, there was sufficient evidence to prove that the photographs amounted to depictions of erotic nudity in that they constituted wanton, lewd, and lustful depictions of young girls' genital, pubic, or rectal areas that tended to produce voluptuous or lewd emotions in defendant. Specifically, the genital, pubic, and rectal areas of the children were the main focus of several of the photographs, and in many photographs the children were "posing," "mimicking" sexual acts, or kissing. Moreover, at least one photograph of the children contained a caption—"Lesbian lolitas"—that designated its sexual or lewd content. Evidence also showed that defendant had a sexual interest in young girls, which shed light on his motive for possessing the photographs. Further, the jury was properly instructed on the statutory definition of "erotic nudity" and the word "lascivious." Thus, viewing the evidence in the light most favorable to the prosecutor, a reasonable jury could have concluded that these photographs portrayed erotic nudity and produced lewd emotions in defendant. Accordingly, sufficient evidence supported defendant's child sexually abusive material conviction. Because defendant's conviction of possession of child sexually abusive material need not be reversed, we conclude his conviction for using a computer to commit a crime must also stand.

Defendant also argues that his constitutional protection against unreasonable search and seizure was violated when the parole supervisor conducted a warrantless search of the tablet computer. He also asserts that defense counsel's failure to file a pretrial motion to suppress the contents of the tablet computer that was discovered in violation of defendant's Fourth Amendment rights was ineffective assistance of counsel. We disagree.

To preserve a claim that a search violated a defendant's Constitutional right to protection from unreasonable search and seizure, the defendant must move to suppress the evidence below. *People v Knox*, 469 Mich 502, 508; 674 NW2d 366 (2004). Defendant did not object to the validity of the search at trial. Accordingly, this issue is unpreserved. To preserve a claim of ineffective assistance of counsel, a defendant must move for a new trial or an evidentiary hearing with the trial court. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Because defendant never moved for a new trial or an evidentiary hearing in the trial court, this issue is unpreserved. [1] Review of unpreserved claims of ineffective assistance of counsel is limited to the existing record. *Id*.

This Court reviews unpreserved claims of nonstructural constitutional error for plain error. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred; 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

---

[1] Defendant did file a timely motion to remand with this Court seeking to file with the trial court a motion for new trial and an evidentiary hearing concerning his counsel's alleged ineffectiveness for failing to seek suppression of the contents of the tablet computer. This Court denied the motion. *People v Danny Dewayne Waller*, unpublished order of the Court of Appeals, entered January 31, 2017 (Docket No. 333056).

The Fourth Amendment of the United States Constitution and the Michigan Constitution guarantee the right to be free from unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. There is no guarantee against all searches and seizures, only unreasonable ones. *People v Dagwan*, 269 Mich App 338, 342; 711 NW2d 386 (2005). "Ordinarily, searches or seizures conducted without a warrant are unreasonable per se." *Id*. But, "the warrant and probable cause requirements generally do not apply to searches of parolees, probationers or their residences." *United States v Smith*, 526 F 3d 306, 308 (CA 6, 2008), citing *Samson v California*, 547 US 843, 857; 126 S Ct 2193; 165 L Ed 2d 250 (2006). Instead, the relevant standard governing searches of parolees in Michigan, Mich Admin Code, R 791.7735, is as follows:

(1) A parole agent may conduct a warrantless search of a parolee's person or property under any of the following circumstances

(a) Incident to a lawful arrest pursuant to section 39 of Act No. 232 of the Public Acts of 1953, as amended, being [MCL] 791.239 of the Michigan Compiled Laws.

(b) A stop and frisk, if there is reasonable cause to believe that the parolee is presently involved in criminal conduct, has violated a condition of parole, or is carrying a weapon.

(c) Seizure of evidence or contraband in plain view.

(d) With the consent of the parolee or a third party having mutual control over the property to be searched.

(2) Where none of the circumstances specified in subrule (1) of this rule are present and there is reasonable cause to believe that a violation of parole exists, a parole agent may conduct a search of a parolee's person or property if, as soon as possible thereafter, the parole agent files a written report with his or her supervisor setting forth the specific reasons for the search, describing the location or place searched, and describing the specific items seized.

Here, the reasonable cause standard in Rule 791.7735(2) was satisfied in regards to the search of defendant's residence. A counselor at Eaton Behavioral Health informed the parole supervisor that defendant had been using a device that was possibly capable of connecting to the internet in violation of the terms of his parole. Thus, there was reasonable cause to believe that defendant was violating the terms of his parole. See *People v Barbarich*, 291 Mich App 468, 474; 807 NW2d 56 (2011) (reasonable suspicion may be based upon information received from an informant if the information exhibits sufficient indicia of reliability). Accordingly, the parole supervisor was justified in conducting a warrantless search of defendant's residence.

Further, the search was justified under Rule 791.7735(1)(a) which provides that a parole agent may conduct a warrantless search of a parolee's person or property incident to a lawful arrest as described in MCL 791.239. That statute authorizes a parole officer to arrest a parole

violator without a warrant if the officer has reasonable grounds to believe the prisoner has violated his or her parole.[2] Thus, read in conjunction, these two provisions allow a parole officer, with reasonable grounds to believe that a parolee has violated his or her parole, to arrest the violator without a warrant and subsequently conduct a warrantless search of the parolee's property. As discussed above, there was reasonable cause to believe that defendant violated his parole by possessing a device capable of connecting to the internet, and the parole supervisor therefore had the statutory power to arrest him under MCL 791.239. Having ordered this lawful arrest, he was entitled, pursuant to Rule 791.7735(1)(a), to thoroughly search the tablet as he did without a warrant. Accordingly, defendant's Fourth Amendment rights were not violated.

The United States and Michigan Constitutions guarantee a defendant the right to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. To establish ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Failing to file a suppression motion is not per se ineffective assistance; a defendant must still demonstrate that counsel's performance was objectively unreasonable and that "but for counsel's deficient performance, the result of the proceedings would have been different." *Trakhtenberg*, 493 Mich at 51; see also *People v Fike*, 228 Mich App 178, 181-182; 577 NW2d 903 (1998) (finding that the defendant failed to establish that he received ineffective assistance of counsel as his Fourth Amendment claim had no merit). This Court has found that where counsel failed to seek suppression of evidence on the basis of a Fourth Amendment violation that likely would have succeeded, counsel's performance was unreasonable. *People v Thomas*, 184 Mich App 480, 482; 459 NW2d 65 (1990). Counsel is not, however, required to advocate a meritless position. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

As discussed above, any claim that defendant's Fourth Amendment rights were violated could not have succeeded. Because counsel is not required to argue meritless positions, *Ericksen*, 288 Mich App at 192, counsel's failure to move for suppression of the evidence found on the tablet computer on that basis did not fall below an objective standard of reasonableness, and defendant was not denied the effective assistance of counsel, *Trakhtenberg*, 493 Mich at 51.

---

[2] MCL 791.239 states:

A probation officer, a parole officer, a peace officer of this state, or an employee of the department other than a probation or parole officer who is authorized by the director to arrest parole violators may arrest without a warrant and detain in any jail of this state a paroled prisoner, if the probation officer, parole officer, peace officer, or authorized departmental employee has reasonable grounds to believe that the prisoner has violated parole or a warrant has been issued for his or her return under section 38.

Next, defendant argues that the trial court erred in denying defendant's pretrial motion to suppress his statements to his probation supervisor. We disagree.

This Court reviews a trial court's ruling on a motion to suppress de novo. *People v Steele*, 292 Mich App 308, 313; 806 NW2d 753 (2011). A trial court's findings of fact regarding a motion to suppress are reviewed for clear error. *People v Elliott*, 494 Mich 292, 300; 833 NW2d 284 (2013). The ultimate question of whether a person is "in custody" requiring *Miranda* warnings is a mixed question of fact and law that must be answered independently on the basis of a de novo review of the record. *People v Mendez*, 225 Mich App 381, 382; 571 NW2d 528 (1997).

The United States and Michigan Constitutions guarantee the right against self-incrimination. US Const, Am V; Const 1963, art 1, § 17. *Miranda*[3] requires that a person who is subject to custodial interrogation be given a series of warnings to protect that constitutional privilege against self-incrimination. *People v Tanner*, 496 Mich 199, 207-208; 853 NW2d 653 (2014). Interrogation "refers to express questioning and to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect." *People v Anderson*, 209 Mich App 527, 532-533; 531 NW2d 780 (1995). Statements a defendant makes during a custodial interrogation are inadmissible at trial unless the defendant voluntarily, knowingly, and intelligently waived his Fifth Amendment rights. *People v Mayes (After Remand)*, 202 Mich App 181, 190; 508 NW2d 161 (1993).

To determine whether a defendant was in custody at the time of questioning, courts consider the totality of the circumstances. *Id*. " 'Relevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning.' " *Elliott*, 494 Mich at 307, quoting *Howes v Fields*, 565 US 499, 509; 132 S Ct 1181; 182 L Ed 2d 17 (2012). " 'Not all restraints on freedom of movement amount to custody for purposes of *Miranda*.' " *Id*. "[W]hether incarceration constitutes custody for *Miranda* purposes . . . depends upon whether it exerts the coercive pressure that *Miranda* was designed to guard against—the danger of coercion [that] results from the interaction of custody and official interrogation." *Id*. at 306 (citations and quotation marks omitted). Thus, "the first constitutional step is to determine 'whether an individual's freedom of movement was curtailed . . . .' " *Id*. at 308, quoting *Howes*, 565 US at 509. If it was, "the court should then ask 'the additional question whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*.' " *Id*.

Here, defendant was on parole with an electronic tether that required his presence at the scene of the questioning. There was no evidence that defendant was told that he was free to leave the meeting or end the questioning. Our Supreme Court has acknowledged that inherently compelling pressures might arise in the relationship between a parolee and a parole officer.[4]

---

[3] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[4] Because the parolee-parole officer relationship is adversarial, a parole officer is a state agent, parolees are generally "obligated to report to and answer his or her parole officer's questions to

*Elliott*, 494 Mich at 314-315. Thus, defendant was subject to some conditions that limited his ability to end the interview. But "custody for *Miranda* purposes has been more narrowly circumscribed," and under that narrower standard, defendant "was not in custody for purposes of receiving *Miranda* protection since there was no formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Minnesota v Murphy*, 465 US 420, 430; 104 S Ct 1136; 79 L Ed 2d 409 (1984) (citations omitted).

Defendant was questioned at his residence for about 12 to 15 minutes; the questions pertained to a suspected parole violation rather than a suspected crime; there was no evidence that the parole supervisor was armed or threatened defendant, and he did not impose restraints in addition to those imposed by defendant's parole, and there was no indication that defendant tried to stop the interview, refused to answer any questions, or requested or attempted to leave. In fact, there was no nexus between defendant's location and his interrogation as he "was not taken into, or maintained in, custody to facilitate his interrogation." *People v Herndon*, 246 Mich App 371, 396; 633 NW2d 376 (2001). Thus, "any compulsion [defendant] might have felt from the possibility that terminating the meeting would have led to revocation of probation was not comparable to the pressure on a suspect who is painfully aware that he literally cannot escape a persistent custodial interrogator." *Minnesota*, 465 US at 433; see also *Elliott*, 494 Mich at 308-316 (finding a parolee detained on a parole violation was not in custody for purposes of *Miranda*). Accordingly, under the totality of the circumstances, a reasonable person in defendant's position would not have believed that there was a restriction of his freedom beyond his normal parole restrictions, and the situation did not present the " 'same inherently coercive pressures as the type of station house questioning at issue in *Miranda*.' " *Elliott*, 494 Mich at 308, quoting *Howes*, 565 US at 509. Thus, defendant's statements were made during a noncustodial interrogation, which did not require that he be advised of his rights pursuant to *Miranda*, and the trial court therefore did not err in denying the motion to suppress.

Lastly, defendant argues that he was denied due process and a fair trial when the trial court abused its discretion by admitting evidence of his prior convictions—four counts of criminal sexual conduct (CSC) in the 3rd degree, and one count of CSC in the 4th degree with a victim between the ages of 13 and 15. We disagree.

This Court reviews a trial court's determination regarding the admissibility of evidence for an abuse of discretion. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). An abuse of discretion occurs where the result falls outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

If offered for a permissible purpose, MRE 404(b)(1) permits evidence of other crimes, wrongs, or acts to be admitted at trial. Specifically, MRE 404(b)(1) provides that:

---

avoid the revocation of parole," and "[i]f a parole officer has reasonable grounds to believe that a parolee has violated the conditions of his or her parole, MCL 791.239 provides the officer with statutory authority to arrest the parolee." *People v Elliott*, 295 Mich App 623, 644; 815 NW2d 575 (2012), reversed on other grounds 494 Mich 292 (2013).

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case. [MRE 404(b)(1).]

MRE 404(b)(1) is a rule of inclusion, meaning other acts evidence should be admitted if it is not being offered solely to demonstrate "action in conformity," i.e., criminal propensity. *People v Martzke*, 251 Mich App 282, 289; 651 NW2d 490 (2002).

Our Supreme Court has detailed the correct approach to admitting other acts evidence:

First, the prosecutor must offer the other acts evidence under something other than a character to conduct or propensity theory. MRE 404(b). Second, the evidence must be relevant under MRE 402, as enforced through MRE 104(b), to an issue of fact of consequence at trial. Third, under MRE 403, a determination must be made whether the danger of undue prejudice [substantially] outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decision of this kind under Rule 403. Finally, the trial court, upon request, may provide a limiting instruction under MRE 105. [*People v Sabin (After Remand)*, 463 Mich 43, 55-56; 614 NW2d 888 (2000) (quotation marks and citation omitted).]

"Relevant evidence [] is evidence that is material (related to any fact that is of consequence to the action) and has probative force (any tendency to make the existence of a fact of consequence more or less probable than it would be without the evidence)." *Id*. at 57. A fact is material when it is within the range of litigated matters in controversy. *Id*. Evidence causes unfair prejudice if it is only marginally probative and may be given undue weight by the jury. *People v Ackerman*, 257 Mich App 434, 442; 669 NW2d 818 (2003).

First, evidence of defendant's prior convictions was offered for the purpose of proving defendant's intent in possessing the photographs at issue. Intent is a proper purpose under MRE 404(b). *People v Crawford*, 458 Mich 376, 387; 582 NW2d 785 (1998) (noting that "intent" is included in "MRE 404(b)'s laundry list of proper purposes"). Thus, the prosecutor articulated a proper purpose for admission of defendant's prior CSC convictions.

Second, defendant's intent in possessing the photographs was relevant to a fact at issue: namely, whether the photographs constituted child sexually abusive material. Because "knowledge" is the *mens rea* element of possession of child sexually abusive materials, *Flick*, 487 Mich at 13, a prosecutor is not required to prove a defendant's intent for possessing the materials to demonstrate criminal culpability under the statute. But in determining whether images constitute child sexually abusive material, this Court has considered a defendant's subjective intent for possessing the images. See *Riggs*, 237 Mich App at 590 (considering the defendant's intent in making videos that contained nudity when determining whether those videos were lascivious and therefore constituted erotic nudity). In this case, the claim was that

the photographs defendant possessed of nude young girls produced voluptuous or lewd emotions in defendant. Evidence that defendant previously engaged in sexual activity with a 14 and 15 year old girl made this claim more probable than it would have been without the evidence. Thus, the prior CSC convictions tended to create an inference that defendant possessed the photographs for sexual stimulation, which is probative of whether they contained erotic—rather than innocent—nudity and constituted child sexually abusive material.

Third, the danger of undue prejudice did not substantially outweigh the probative value of evidence of defendant's prior convictions. As discussed above, the evidence was highly probative of defendant's intent in possessing the photographs, which negated his claims of innocent intent. The evidence was admitted only for the purpose of proving intent, and no details were elicited regarding defendant's prior convictions, thereby limiting the prejudicial effect. Moreover, the trial court instructed the jury that other acts evidence could be considered only for limited purposes. The trial court also specifically instructed the jurors that they could not "convict the defendant here because [they] think he is guilty of other bad conduct" or decide that defendant's prior CSC convictions "show[] that the defendant is a bad person or that he is likely to commit crimes." Jurors are presumed to follow the trial court's instructions. *People v Unger*, 278 Mich App 210, 237; 749 NW2d 272 (2008). Thus, the trial court did not abuse its discretion in admitting the other acts evidence.

We affirm.

/s/ Jane E. Markey
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra