*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

VINCENT LAMONT SEWARD,

   Defendant-Appellant.

UNPUBLISHED
February 21, 2019

No. 340385
Oakland Circuit Court
LC No. 2017-262160-FH

Before: GLEICHER, P.J., and K. F. KELLY and LETICA, JJ.

PER CURIAM.

A jury convicted Vincent Lamont Seward of third-offense domestic violence, MCL 750.81(5).[1] The trial court sentenced Seward as a fourth-offense habitual offender, MCL 769.12, to 3 to 25 years in prison. Seward appeals as of right. We affirm.

## I. SUFFICIENCY OF THE EVIDENCE

Seward argues on appeal that there was insufficient evidence to support his conviction. We disagree. A challenge to the sufficiency of the evidence in a jury trial is reviewed de novo by reviewing the evidence in the light most favorable to the prosecution to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Harverson*, 291 Mich App 171, 175, 177; 804 NW2d 757 (2010).

---

[1] The judgment of sentence, lower court file, and the parties' appellate briefs consistently refer to MCL 750.81(4) as the statutory provision under which Seward was convicted. We note that before the events underlying this matter, MCL 750.81 was amended by 2016 PA 87, resulting in renumbering of the relevant subsection. Third-offense domestic violence now falls under MCL 750.81(5). As it is undisputed that Seward was charged with, convicted of, and sentenced for third-offense domestic violence, the repeated references to subsection (4) appear to be clerical errors.

"All conflicts with regard to the evidence must be resolved in favor of the prosecution." *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005).

"The relevant elements of the charged domestic assault offense include (1) the commission of an assault or an assault and battery and (2) a dating relationship between the parties [or child shared by the parties]." *People v Cameron*, 291 Mich App 599, 614; 806 NW2d 371 (2011); see also MCL 750.81(2). In this case, the alleged victim was Seward's girlfriend and mother of his child. On appeal, Seward argues that the evidence was insufficient to prove that he assaulted the victim. We disagree.

An assault is "either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery." *People v Musser*, 259 Mich App 215, 223; 673 NW2d 800 (2003) (quotation marks and citation omitted). "[A] battery is the successful accomplishment of an attempted-battery assault," and "is an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *People v Nickens*, 470 Mich 622, 628; 685 NW2d 657 (2004) (quotation marks and citation omitted). Our review of the record discloses that there was sufficient evidence to establish that Seward assaulted and battered the victim. Seward's history of domestic violence involving the victim—dating back to 2010—demonstrated that he had the propensity to commit domestic assault against her. See *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010). Here, the victim called 911 in the midst of a confrontation with Seward. The 911 dispatcher recorded the victim yelling, "You busted my face into the wall." Later, during the call, the victim also stated that Seward "just busted my face in the wall," and "pushed me into the wall and busted my face open." See MRE 803(2) (excited utterances are not excluded by the hearsay rule). When the first responding officer arrived, he observed that the victim's face was bleeding. She reported to the officer that she and Seward had argued, Seward went outside, and when he returned for his belongings, he "grabbed her and smashed her face to the wall." These statements were admissible under MCL 768.27c.[2] After speaking to the

---

[2] In *People v Meissner*, 294 Mich App 438, 445; 812 NW2d 37 (2011), this Court stated:

> In MCL 768.27c, the Legislature determined that under certain circumstances, statements made to law enforcement officers are admissible in domestic violence cases. The statute allows trial courts to admit hearsay statements into evidence if all the following conditions apply:
>
> (a) The statement purports to narrate, describe, or explain the infliction or threat of physical injury upon the declarant.
>
> (b) The action in which the evidence is offered under this section is an offense involving domestic violence.
>
> (c) The statement was made at or near the time of the infliction or threat of physical injury. Evidence of a statement made more than 5 years before the filing of the current action or proceeding is inadmissible under this section.

officer, paramedics treated the victim and she again explained "that she was shoved up against the drywall and her face hit the drywall." See MRE 803(4) (statements made for purposes of medical treatment or medical diagnosis in connection with treatment are not excluded by the hearsay rule). A paramedic who testified at trial observed and treated bruising and a laceration on the victim's left cheek.

Seward emphasizes that the victim and their young son both testified that they lied at the time of the offense. He relies on their trial testimony claiming that Seward was not responsible for the victim's injuries and that the victim accidentally tripped over shoes on the floor. But it was up to the jury to determine the credibility of this testimony, and we "will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005). Viewed as a whole and in a light most favorable to the prosecution, the evidence was sufficient to enable a reasonable jury to find beyond a reasonable doubt that Seward committed domestic violence against the victim.

## II. OTHER-ACTS EVIDENCE

Next, Seward challenges the admission of evidence of his prior acts of domestic violence against the victim. Because Seward did not object to this evidence at trial, this issue is unpreserved. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Accordingly, to be entitled to relief on appeal, Seward must establish a plain error affecting his substantial rights. *People v McCray*, 245 Mich App 631, 638; 630 NW2d 633 (2001).

MCL 768.27b provides, in pertinent part:

(1) Except as provided in subsection (4),[3] in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible *for any purpose for which it is relevant*, if it is not otherwise excluded under Michigan rule of evidence 403. [Emphasis added.]

"The language of MCL 768.27b clearly indicates that trial courts have discretion 'to admit relevant evidence of other domestic assaults *to prove any issue, even the character of the accused*, if the evidence meets the standard of MRE 403.' " *Cameron*, 291 Mich App at 609 (citation omitted; emphasis added). This evidence "can be admitted at trial because 'a full and

---

(d) The statement was made under circumstances that would indicate the statement's trustworthiness.

(e) The statement was made to a law enforcement officer. [MCL 768.27c(1).]

[3] MCL 768.27b(4) provides that "[e]vidence of an act occurring more than 10 years before the charged offense is inadmissible under this section, unless the court determines that admitting this evidence is in the interest of justice."

complete picture of a defendant's history . . . tend[s] to shed light on the likelihood that a given crime was committed.' " *Id.* at 610, quoting *People v Pattison*, 276 Mich App 613, 620; 741 NW2d 558 (2007) (alteration in original).

Seward concedes that the other acts presented by the prosecutor were relevant under MCL 768.27b, but argues that it was plain error not to exclude the evidence under MRE 403. We disagree.

MRE 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

When conducting the MRE 403 balancing test, the trial court "must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *People v Watkins,* 491 Mich 450, 487; 818 NW2d 296 (2012).

> The "unfair prejudice" language of MRE 403 " 'refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock.' " Moreover, admission of "[e]vidence is unfairly prejudicial when . . . [the danger exists] that marginally probative evidence will be given undue or preemptive weight by the jury." [*Cameron*, 291 Mich App at 611 (citations omitted; alterations in original).]

Considerations regarding prejudice include:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. This list of considerations is meant to be illustrative rather than exhaustive. [*Watkins*, 491 Mich at 487-488.]

Seward argues that the evidence of prior domestic violence was unfairly prejudicial because the volume of evidence was overwhelming and distracted the jury from the instant charge. The prosecutor admitted evidence of five other acts between Seward and the victim pursuant to MCL 768.27b, including: (1) a January 4, 2010 argument when Seward punched the victim in the mouth; (2) a May 14, 2012 argument when Seward choked the victim, bit her, and threatened to kill her and her family, which incident led her to obtain a personal protection order (PPO); (3) a June 19, 2012 incident when Seward visited the victim's home in violation of the PPO and she suspected that he knocked her air conditioner out of the window; (4) a December 1, 2012 incident when Seward choked the victim twice and caused damaged to the home, including tipping over a refrigerator; and (5) an April 8, 2015 argument when Seward struck the victim in the face with his hand. In addition to the victim's testimony, officers who responded to the latter

two incidents testified regarding their recollections of the incidents. Several of the victim's written statements from these incidents were also admitted.[4]

This evidence had significant probative value for establishing Seward's propensity to physically assault the victim. *Railer*, 288 Mich App at 219-220. The other acts were also relevant to assess the witnesses' credibility, *Cameron*, 291 Mich App at 612, which was of particular importance in light of the change in the victim's and the child's descriptions of the events between the time of the offense and trial. Finally, the other acts provided context for understanding the relationship and background of Seward and the victim. This was not marginally probative evidence that risked creating unfair prejudice. *Id.* at 611.

Although Seward claims that the amount of evidence was distracting, the other acts all involved the same victim and demonstrated a pattern of arguing, leading to violence by Seward against the victim, thereby adding to the probative value. The risk that the jury would be distracted by extraneous considerations, such as bias, sympathy, anger, or shock, was addressed by the trial court's instructions to the jury about the permissible use of the other-acts evidence. The description of each prior act was brief and less graphic in comparison to the repeated descriptions of Seward slamming the victim's head against the wall, which was the basis for the current charge. While each prior incident involved a degree of violence, none was so inflammatory to preclude the jury from weighing the evidence. Seward has failed to establish a plain error from the admission of the other-acts evidence.

We also reject Seward's related argument that defense counsel was ineffective for failing to object to the other-acts evidence. The United States and Michigan Constitutions guarantee a defendant the right to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). To establish ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694. "Counsel is not ineffective for failing to make a futile objection." *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).

Seward has not established that the admission of the other-acts evidence pursuant to MCL 768.27b was improper. At a *Ginther*[5] hearing, defense counsel testified that he did not

---

[4] In his argument, Seward does not specifically reference the victim's written statements from the December 1, 2012 and April 8, 2015 incidents, which were admitted under MCL 768.27c to support the other-acts evidence under MCL 768.27b. But he states that the other acts introduced from the MCL 768.27c-evidence were unduly prejudicial. As further discussed below, the statements demonstrated a pattern of behavior that carried significant probative value and, given the trial court's instructions to the jury, did not distract with extraneous considerations.

oppose the prosecution's notice of intent to introduce the other-acts evidence because he believed that any challenge to the admission of this evidence would have been fruitless. In light of our conclusion that the evidence was admissible, defense counsel's performance did not fall below an objective standard of reasonableness under prevailing professional norms. *Id*. Moreover, because the evidence was admissible, Seward cannot establish that, but for counsel's failure to object, the result of the proceeding would have been different. Seward is not entitled to a new trial on the basis of ineffective assistance of counsel related to the other-acts evidence.

## III. SENTENCE ENHANCEMENT

Seward argues that it was improper to enhance his sentence under both the domestic-violence statute and the habitual-offender statute. This Court recently rejected this same argument in *People v Stricklin*, 322 Mich App 533, 539-540; 912 NW2d 601 (2018), stating:

> The Legislature has demonstrated its ability to exclude certain categories of felonies from the sentence-enhancement provisions of the habitual-offender statute when it intends to do so. *People v Bewersdorf*, 438 Mich 55, 72; 475 NW2d 231 (1991). In this case, however, nothing in the habitual-offender statute or the domestic-violence statute indicates an intent by the Legislature to exclude third-offense domestic violence from the enhancement provisions of MCL 769.12. The plain language of the relevant statutes thus does not aid defendant's argument.

Quoting *People v Fetterley*, 229 Mich App 511, 540-541; 583 NW2d 199 (1998), this Court also explained that " '[w]here the legislative scheme pertaining to the underlying offenses elevates the offense, rather than enhances the punishment, on the basis of prior convictions, both the elevation of the offense and the enhancement of the penalty under the habitual offender provisions is permitted.' " *Stricklin*, 322 Mich App at 540. Seward concedes that *Stricklin* is binding, but argues that it was incorrectly decided. Following *Stricklin*, as required by MCR 7.215(J)(1), we conclude that the trial court did not err by enhancing Seward's sentence under MCL 769.12 even though his domestic violence conviction had already been elevated because it was his third offense. Thus, Seward has not established that resentencing is required on the basis of improper enhancement.

Seward also argues that his sentence was disproportionate. But apart from his disagreement with this Court's holding in *Stricklin*, Seward does not dispute that his minimum sentencing guidelines range was properly calculated or argue that the trial court either erred in scoring the guidelines or relied on inaccurate information in determining his sentence. MCL 769.34(10) (absent a scoring error or reliance on inaccurate information, this Court shall affirm a sentence if it is within the appropriate guidelines range). Seward's 36-month minimum sentence is within the properly scored sentencing guidelines range of 12 to 48 months, as permissibly enhanced by MCL 769.12 under *Stricklin*. Therefore, Seward's sentence is "presumptively

---

[5] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

proportionate and must be affirmed." *People v Jackson*, 320 Mich App 514, 527; 907 NW2d 865 (2017).[6]

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Seward argues that defense counsel was ineffective for failing to inform him of a plea offer, or failing to provide him with adequate information to enable him to make an informed choice about a plea, including the maximum penalty under the fourth-offense habitual offender enhancement.[7]

A trial court's factual findings rendered following a *Ginther* hearing are reviewed for clear error. *LeBlanc*, 465 Mich at 579. But this Court reviews de novo the constitutional question of whether a defendant was deprived of his or her right to the effective assistance of counsel. *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008).

The right to the effective assistance of counsel applies to the plea-bargaining process. *Lafler v Cooper*, 566 US 156, 162; 132 S Ct 1376; 182 L Ed 2d 398 (2012). To constitute effective assistance, a defense attorney must enable "the defendant to make an informed and voluntary choice between trial and a guilty plea." *People v Corteway*, 212 Mich App 442, 446; 538 NW2d 60 (1995). The defense attorney must explain "the range and consequences of available choices in sufficient detail to enable the defendant to make an intelligent and informed choice." *People v Jackson*, 203 Mich App 607, 614; 513 NW2d 206 (1994). A defendant who claims that defense counsel failed to communicate a plea offer " 'has the burden of proving by a preponderance of the evidence that a plea offer was made and that his counsel failed to communicate it to him.' " *People v Todd*, 186 Mich App 625, 634-635; 465 NW2d 380 (1990), quoting *People v Williams*, 171 Mich App 234, 242; 429 NW2d 649 (1988).

At the outset, we note that the nature or formality of the plea discussions was in dispute at the *Ginther* hearing. Defense counsel testified that he and the prosecutor discussed a possible plea to second-offense domestic violence and he communicated the "offer" to Seward. In contrast, the prosecutor testified that she asked defense counsel to first ask Seward if he would be willing to make such a deal before she sought approval of any offer from her supervisor. When a prosecutor makes an offer contingent on approval from a supervisor (a "conditional offer"), the defendant must prove by a preponderance of the evidence that the defendant would

---

[6] We recognize that the Michigan Supreme Court has scheduled oral argument and briefing regarding the continued validity of MCL 769.34(10) in the wake of the Court's decision in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). *People v Ames*, 501 Mich 1026 (2018). But until the Supreme Court holds otherwise, we must continuing applying our existing precedent concerning MCL 769.34(10). MCR 7.215(C)(2).

[7] Seward also asserted at a *Ginther* hearing that he did not know the minimum sentencing guidelines range or that the police would be able to testify regarding what they were told at the scene under MCL 768.27c, thereby impeaching the victim's and the child's testimony at trial. However, he does not press these arguments on appeal and we will not address them further.

have accepted it and the supervisor would have approved it. *Todd*, 186 Mich App at 635; *Williams*, 171 Mich App at 242. There was no evidence at the *Ginther* hearing regarding whether the prosecutor's supervisor would have approved any plea.

In any event, defense counsel and Seward testified differently at the *Ginther* hearing regarding whether counsel ever communicated with Seward about a possible plea and whether Seward was willing to accept a plea. Defense counsel testified that he discussed the second-offense domestic violence plea with Seward shortly after talking to the prosecutor. Counsel said that when he tried to discuss the details with Seward, including the difference between this misdemeanor offense and his felony charge, as well as the maximum sentence, Seward repeatedly replied, "I am not pleading in this case." Moreover, although counsel could not specifically remember the arraignment, he testified that his usual practice would have been to discuss with Seward the felony charge Seward faced, the fourth-offense habitual offender notification, including the unlikely possibility of a life sentence, and the sentencing guidelines at that time. Counsel acknowledged that he may not have specifically mentioned the prosecutor's notice of intent to introduce evidence under MCL 768.27c, but testified that he would have told Seward that the officers would testify about what the victim had told them and the jury would weigh the credibility of the victim's and their son's trial testimony accordingly. Defense counsel testified that he thought a second-offense domestic violence plea was a good deal. Counsel further testified that, on the day of trial, he again suggested seeking out a plea agreement, but Seward again refused.

Seward claimed differently, asserting that he had no knowledge of a plea deal until he was convicted and preparing for sentencing. He also claimed that he did not understand the possible punishment for third-offense domestic violence with a fourth-offense habitual offender enhancement. Seward claimed that he and defense counsel never discussed the sentencing guidelines and he thought he could serve five years, at the most.

The trial court did not clearly err by rejecting Seward's argument that defense counsel failed to communicate the possibility of a plea and its ramifications to Seward. The trial court cited counsel's statements at the arraignment that he spoke to Seward, and counsel's testimony that, in his practice, he would discuss a defendant's sentencing exposure around the time of that hearing. The trial court also credited counsel's testimony that Seward knew that the police would be able to impeach the victim's testimony with what she said at the scene. The trial court found that the record supported defense counsel's explanation of discussing the plea with the prosecutor and Seward. The prosecutor was motivated not to have the child testify, and she recalled talking to defense counsel about a plea before and after he spoke to Seward about it. Counsel told Seward that the charge would be reduced, he would not be convicted of a felony, and he would serve a maximum of a year in jail, without time in prison. The trial court found that the tendency of defense attorneys to negotiate a good plea deal for their clients, as opposed to trying cases, also supported defense counsel's explanation. In fact, defense counsel testified that he had handled about 250 to 300 criminal cases in his career, but only represented a criminal defendant at trial five or six times. Given the evidence that defense counsel communicated the available choices in sufficient detail to enable Seward to make an intelligent and informed choice, *Jackson*, 203 Mich App at 614, Seward cannot establish that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.

Moreover, even if Seward had established by a preponderance of the evidence that defense counsel failed to communicate the necessary information about the plea deal, Seward has not established a reasonable probability that the outcome of the proceedings would have been different. Although Seward asserts on appeal that he would have entered a plea, the trial court credited defense counsel's testimony that Seward repeatedly refused to consider a plea in this case. When counsel tried to discuss a plea and the sentencing ramifications, Seward would interject by saying, "I am not pleading in this case." As the trial court found, Seward maintained his innocence throughout the case. See e.g., *Burt v Titlow*, 571 US 12, 22: 134 S Ct 10; 187 L Ed 2d 348 (2013) (where a criminal defendant maintains innocence, counsel did not perform deficiently in advising withdrawal of an earlier plea agreement because the defendant has the ultimate authority to decide whether to accept a plea bargain and counsel must not override his client's desire to plead not guilty). On cross-examination, Seward admitted that he maintained his innocence with the police, in a polygraph examination, during the presentence investigation interview, and at sentencing. The trial court also found that the fact that Seward requested a trial date at the arraignment, which usually does not occur until a pretrial, supported defense counsel's testimony that Seward did not want to enter a guilty plea in this case. Seward cannot establish by a preponderance of the evidence that he would have accepted any plea offer, or even that he wanted to consider a contingent offer. Accordingly, Seward has failed to establish that he was denied the effective assistance of counsel regarding a plea.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Anica Letica