*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

V

KEITH WILLIAMS,

      Defendant-Appellant.

UNPUBLISHED
May 13, 2026
1:37 PM

No. 371879
Wayne Circuit Court
LC No. 24-001222-01-FH

Before: BAZZI, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals by right his convictions of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84; assault with a dangerous weapon (felonious assault), MCL 750.82; and two counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to 3 to 15 years' imprisonment for AWIGBH and 2 to 6 years' imprisonment for felonious assault, to run concurrently. It further sentenced defendant to two years' imprisonment for each felony-firearm conviction, to run concurrently to each other but consecutively to his other sentences. Defendant now argues that he was denied the effective assistance of counsel, deprived of due process and a fair trial because of prosecutorial error, denied a fair trial by the cumulative nature of the errors, and that his convictions violated double jeopardy. We disagree and affirm defendant's convictions.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In April 2023, a shooting occurred at defendant's brother's house in Detroit. At the time, defendant's brother, Derrick Williams, had not seen defendant since October 2021, when defendant allegedly "shot the house up" while Derrick and his son were inside. On the night of the April 2023 shooting, Derrick arrived home at about 2:00 a.m. and found defendant parked outside the home. They began arguing, and as Derrick walked away to enter his home, he heard gunshots. Defendant drove away and called Derrick, stating: "I should have killed your son, b**ch. Just know you started again." Derrick discovered two bullet holes in his front window, with one bullet lodged in the upper window and another bullet lodged in an interior wall across his

dining room.  At 2:51 a.m., Derrick received the following text messages from defendant: "I know you dying tonight, b**ch.  All night you on for the news tonight.  Just remember, you started again.  Don't sleep."  Derrick did not reply and went to sleep.  He awoke at 6:00 a.m. to find that his house was on fire.  After the fire department extinguished the fire, Derrick received another text from defendant: "You okay?  Lol."

Before trial, the trial court granted the prosecution's motion in limine requesting to introduce other-acts evidence of the alleged arson and defendant's text messages under MRE 404(b).  The court explained that "there will be special instructions given to the jury as to what 404b evidence means.  It's not indicating that the defendant caused the fire.  It does show an intent of how he feels about his brother potentially."  The trial court ordered the parties "to turn over any text messages that they're in possession of."  Defense counsel stated, "They took [defendant]'s phone, so they should be able to obtain whatever messages are there."  The trial court explained, "anything that is exculpatory in any way, the prosecutor has an obligation to turn it over," and the prosecutor replied that defense counsel "also has the opportunity to view the cell phone," in Officer Tobel's presence, "if he should so choose."

At two pretrial hearings, the parties discussed a plea offer under which defendant would plead guilty to felonious assault in exchange for the dismissal of his other charges and the habitual-offender notice.  Defendant's sentence would be two years' probation, with the first six months to be served in the Wayne County Jail, and he would be required to avoid contact with Derrick and complete anger management classes, a substance-abuse evaluation, and other treatment as recommended.  Defendant rejected the offer.

At trial, defense counsel noted that part of the defense theory was that the bullet holes in Derrick's window were present before the April 2023 shooting, so he intended to admit ShotSpotter reports[1] from the October 2021 shooting.  The trial court allowed the reports to be introduced into evidence and told the prosecutor that she could ask about the reports on direct examination.  Both parties agreed to this ruling.  The parties also discussed the plea offer, which defendant again rejected.

Derrick testified that he had a Ring camera outside his house that was functioning at the time of the shooting, but that the camera did not capture the actual shooting because it was out of frame. Detroit Police Officer Bradley Tobel testified that the Ring camera was damaged from the fire and confirmed that there was no footage available of the April 2023 shooting.  The jury convicted defendant on all charges, and the trial court denied defendant's motion for a new trial or

---

[1] ShotSpotter is a type of acoustic sensor that identifies the sound of a gunshot, approximates the location of the gunfire, and reports that information to a third-party expert for verification.  If the expert determines that a shot was fired, then the information is forwarded to the local police.

*Ginther*[2] hearing. This appeal followed. Defendant moved this Court to remand the case for a *Ginther* hearing, but we denied the motion without prejudice.[3]

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that defense counsel was unconstitutionally ineffective in failing to (1) secure Ring camera footage from the time of the April 2023 shooting, (2) prepare an order for returning defendant's cell phone to obtain the entire text-message conversation between defendant and Derrick, (3) object at trial or bring a motion in limine regarding the alleged October 2021 shooting, (4) ensure that the jury was instructed on a lesser included offense of AWIGBH, and (5) fully explain the plea offer to defendant before trial. We disagree with all these arguments.

## A. STANDARD OF REVIEW

A claim of ineffective assistance of counsel "presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). "The trial court must first find the facts and then decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Because the trial court denied defendant's request for an evidentiary hearing, this Court's review is limited to mistakes apparent on the record. See *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020).

The United States and Michigan Constitutions entitle a criminal defendant to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. "Effective assistance of counsel is strongly presumed, and the defendant bears the heavy burden of proving otherwise." *People v Haynes*, 338 Mich App 392, 429; 980 NW2d 66 (2021) (quotation marks and citations omitted). "In order to obtain a new trial because of ineffective assistance of counsel, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that [the] outcome would have been different." *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023) (quotation marks and citation omitted). See also *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Yeager*, 511 Mich at 488 (quotation marks and citation omitted). "The defendant has the burden of establishing the factual predicate of his ineffective assistance claim." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] *People v Williams*, unpublished order of the Court of Appeals, entered December 29, 2025 (Docket No. 371879).

## B. FAILURE TO OBTAIN EVIDENCE

Defendant first argues that defense counsel was ineffective in failing to obtain Ring camera footage from the shooting because the footage could have been exculpatory. But defendant has failed to prove that this footage existed in the first place. During a pretrial hearing, defense counsel informed the trial court that he had already requested any footage from the Ring camera on the night of the April 2023 shooting, and the prosecutor confirmed on the record that no such footage existed. During trial, defense counsel asked Derrick about the camera, and he testified that he never gave the Ring camera information to the police because it was not positioned to capture the sidewalk and the street outside of his home where defendant was. There was no evidence to contradict that statement. Defense counsel was not ineffective for failing to obtain evidence after requesting it, learning that it did not exist, and cross-examining a witness to confirm to the jury that it did not exist.

Similarly, defendant argues that his defense counsel was ineffective in failing to prepare an order for the return of defendant's cell phone, which would have allowed him to obtain the entire April 2023 text-message conversation between defendant and Derrick. During defendant's preliminary examination, defense counsel asked the district court if defendant could have his cell phone returned, and the district court told him that it would sign an order for the return of the phone if he prepared one. There is no record that the order was ever prepared. However, defendant has failed to show that any other text messages exist, and Derrick testified he did not send any text messages to defendant. According to defendant, if defense counsel had prepared the order and recovered the cell phone, he would have "possibly been able to give some context to the individual texts provided by" Derrick. Defendant does not identify what this "context" would be, what the contents of the messages are, or how they would have changed the outcome of his trial. Both defendant's claims regarding the camera footage and the text messages assume without evidentiary support that the evidence existed, and further, that it was exculpatory. Accordingly, defendant has failed to establish the factual predicate of this portion of his claim. See *Douglas*, 496 Mich at 592.

Defendant alternatively requests that we remand this case for a *Ginther* hearing to further develop the record of the evidence that his counsel allegedly failed to obtain. A remand for a *Ginther* hearing is appropriate if "defendant has demonstrated [an] issue for which further factual development would advance his claim." *People v Chapo*, 283 Mich App 360, 369; 770 NW2d 68 (2009). A defendant demonstrates the need for development of a factual record by presenting affidavits or by making an offer of proof. See MCR 7.211(C)(1). Defendant presents an affidavit in which he asserts, *inter alia*, that he asked his defense counsel to retrieve the Ring camera footage of the shooting. He also offers Ring camera footage of the firefighters responding to the fire after the shooting and an online article describing the cloud storage time options for Ring camera users, which states that the default storage time is 60 days, but users have the option to store videos from 1 to 120 days. These offers of proof do not convince us that any further useful evidence would be uncovered in a *Ginther* hearing. Defendant has not shown whether Derrick retained the default setting or selected another, possibly shorter storage time. There was also no evidence indicating whether defense counsel had the opportunity to subpoena Ring before the footage would have been deleted or whether the missing footage would have been exculpatory. We remain unconvinced of the need for a *Ginther* hearing. And because the affidavit, article, and Ring video were not part of the lower court record, we do not consider them in deciding the merits of this appeal.

-4-

## C. FAILURE TO OBJECT TO OTHER-ACTS EVIDENCE

Defendant also argues that defense counsel was ineffective in failing to object at trial or bring a motion in limine regarding the alleged October 2021 shooting. We note, however, that it was defendant who introduced this evidence at trial. Before jury selection began, defendant noted the ShotSpotter records for the area, explaining that "the argument is that those bullet holes were there before because of previous shootings." The trial court held that it would admit the records and allow the prosecutor to ask about them on direct, and both parties agreed with the trial court's ruling. Defendant then used those records while cross-examining Derrick to establish that multiple shootings had occurred in that neighborhood throughout the years, and he argued in closing that the bullet holes from the October 2021 shooting were never "really differentiated" from the bullet holes in the current shooting. "A defendant will not be heard to introduce and use evidence to sustain his theory at trial and then argue on appeal that the evidence was prejudicial . . . . Defendant's unpreserved claim, therefore, does not warrant reversal." *People v Knapp*, 244 Mich App 361, 378; 624 NW2d 227 (2001).

## D. FAILURE TO REQUEST JURY INSTRUCTION

Defendant also raises an ineffective-assistance claim regarding his jury instructions. "A criminal defendant is entitled to have a properly instructed jury consider the evidence against him. The jury instructions must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Armstrong*, 305 Mich App 230, 239-240; 851 NW2d 856 (2014) (quotation marks and citations omitted). Whether a jury instruction on a lesser offense is warranted depends on whether the lesser offense is a lesser included offense or a cognate offense. *People v Lowery*, 258 Mich App 167, 173; 673 NW2d 107 (2003). An offense is a lesser included offense if all the elements of the lesser offense "are contained within those of the greater offense," whereas a cognate offense "shares some common elements with, and is of the same nature as, the greater offense, but also has elements not found in the charged offense." *Id*. "Instructions on cognate lesser offenses are not permitted, while instructions on necessarily included offenses are proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *Id*.

In this case, defense counsel requested an instruction on both aggravated assault and assault and battery as a lesser included offenses of AWIGBH. The trial court stated that it would give the instruction because there was no objection, but it only explicitly mentioned the aggravated assault instruction. Later, the trial court realized that aggravated assault "has an element in it which requires an injury," which is not required for AWIGBH. As a result, the trial court would not give the aggravated assault instruction, but it again did not mention assault and battery.

The elements of AWIGBH are "(1) an assault, i.e.[,] an attempt to offer with force and violence to do corporal hurt to another coupled with (2) a specific intent to do great bodily harm less than murder." *People v McKewen*, ___ Mich ___; ___ NW3d ___ (2024) (Docket No. 158869); slip op at 5 (quotation marks and citation omitted). Comparatively, "[a]n assault may be established by showing either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005). Battery is "an intentional, unconsented and harmful or offensive

touching of the person of another, or of something closely connected with the person." *Id*. (quotation marks and citations omitted). "Thus, when one attempts an intentional, unconsented, and harmful or offensive touching of a person, one has committed an assault." *Id*.

Defendant argues that defense counsel should have renewed his request for the assault-and-battery instruction. Defendant presumes that there is no question whether assault and battery qualifies as a lesser included offense of AWIGBH because he offers no argument relating to this issue. Accordingly, we could treat his claim as abandoned. See *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004) ("The failure to brief the merits of an allegation of error constitutes an abandonment of the issue."). See also *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.").

Regardless, at no point does defendant claim that the jury would have convicted him of assault and battery instead of AWIGBH, and defendant has the "burden of establishing the factual predicate of his ineffective assistance claim." *Douglas*, 496 Mich at 592. An instruction on a lesser included offense is appropriate if "a rational view of the evidence would support it." *Lowery*, 258 Mich App at 173. "There must be more than a modicum of evidence; there must be sufficient evidence that the defendant could be convicted of the lesser offense." *People v Cheeks*, 216 Mich App 470, 479-480; 549 NW2d 584 (1996). "Whether the instruction on the lesser included offense should have been given thus turns on whether a rational view of the evidence supported the conclusion that defendant lacked . . . the intent to do great bodily harm." *People v Haynie*, 505 Mich 1096 (2020).[4] Here, the evidence showed that defendant argued with Derrick before firing a gun 10 times, with two of those shots striking near where Derrick was attempting to enter his house. After that incident, defendant texted Derrick: "I know you dying tonight, b**ch. All night you on for the news tonight. Just remember, you started again. Don't sleep." Because defendant practically told Derrick that he intended Derrick's death, no rational view of the evidence could support a finding of simple assault and battery instead of AWIGBH. Therefore, this claim fails because the outcome of defendant's trial would not have changed.

## E. FAILURE TO EXPLAIN PLEA OFFER

Finally, defendant asserts that his defense counsel was ineffective in failing to fully explain the plea offer to him. A criminal defendant is entitled to the effective assistance of his attorney when negotiating a plea. See *Douglas*, 496 Mich at 591-592. An attorney must "properly advise [a] defendant regarding the nature of the charges or the consequences of the guilty plea," to provide a defendant with "the ability to make an intelligent and informed choice from among his alternative

---

[4] "Supreme Court orders that include a decision with an understandable rationale establish binding precedent." *People v Giovannini*, 271 Mich App 409, 414; 722 NW2d 237 (2006). See also *People v Crall*, 444 Mich 463, 464 n 8; 510 NW2d 182 (1993) (stating that a Supreme Court order is binding if it constitutes a final disposition of an application and contains a "concise statement of the applicable facts and reasons for the decision").

courses of action." *People v White*, 331 Mich App 144, 148; 951 NW2d 106 (2020) (quotation marks and citation omitted).

> When a defendant claims to be prejudiced by rejecting a plea offer on the basis of ineffective assistance of counsel, the defendant must show (1) that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances); (2) that the court would have accepted its terms; and (3) that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. [*Id*. at 149-150 (quotation marks and citation omitted).]

In this case, defendant received a plea offer in which he would have pleaded guilty to felonious assault in exchange for dismissal of his remaining charges. Defendant argues that he would have accepted the plea offer if defense counsel had informed him of the mandatory two-year sentence for a felony-firearm conviction.

A defendant must prove by a preponderance of the evidence that defense counsel failed to communicate a plea offer. *People v Williams*, 171 Mich App 234, 242; 429 NW2d 649 (1988). Here, the parties discussed the evolving plea offer at two pretrial hearings, during which defense counsel stated that he had discussed the offer with defendant, who wished to proceed to trial. At the second pretrial hearing, defendant confirmed on the record that he was rejecting the final plea offer. On the day of trial, the parties placed the final plea offer on the record, and defendant confirmed again that he did not want to accept. Although the felony-firearm sentence was never specifically stated on the record, there is no indication that defendant was confused about defense counsel's explanation or unaware of the possible sentence. Therefore, there was no mistake apparent on the record, and defendant has failed to establish a factual basis for that claim. See *Douglas*, 496 Mich at 592.

## III.  PROSECUTORIAL ERROR

Defendant argues that he was denied due process and a fair trial because the prosecutor (1) failed to obtain the Ring camera footage, (2) ignored the trial court's instruction to provide all text messages to defendant, (3) repeatedly led witnesses at trial, (4) elicited testimony about the October 2021 incident that was not included in her MRE 404(b) motion, and (5) argued facts not in evidence to the jury. We disagree with all these arguments.

### A.  PRESERVATION AND STANDARD OF REVIEW

"To preserve a claim of prosecutorial error, a defendant must timely and specifically challenge the prosecutor's statements or conduct." *People v Thurmond*, 348 Mich App 715, 735; 20 NW3d 311 (2023). Defendant points to three instances of the prosecutor asking leading questions at trial and three instances of allegedly inappropriate remarks during her closing argument. Because defense counsel contemporaneously objected to the first two instances of leading questions and objected at the end of closing to the prosecutor's remark regarding defendant's vehicle not having bullet holes, those claims are preserved. However, defense counsel

did not object to the third instance of leading questions or the other two closing remarks, so those claims are not preserved. See *id.*

"The test for prosecutorial error is whether the defendant was denied a fair trial." *Id.* at 736. This Court reviews claims of prosecutorial error on a case-by-case basis, and "must examine the entire record and evaluate a prosecutor's remarks in context." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). "A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Id.* Unpreserved claims of prosecutorial error are reviewed for plain error affecting defendant's substantial rights. *Thurmond*, 348 Mich App at 736.

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. [*People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (citation omitted).]

"If defendant satisfies those three requirements, we must make a fourth determination: whether the plain error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of defendant's innocence." *People v Anderson*, 341 Mich App 272, 280; 989 NW2d 832 (2022).

## B. *BRADY*[5] VIOLATIONS

Defendant argues that the prosecution committed "potential" *Brady* violations by failing to obtain any Ring camera footage of the shooting and failing to provide him with all the text messages from the time of the shooting. This Court "reviews due-process claims, such as allegations of a *Brady* violation, de novo." *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016) (quotation marks and citation omitted). "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). To establish a *Brady* violation, a defendant must show: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material." *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014). "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Id.* at 150. "To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quotation marks and citation omitted).

Defendant's claim fundamentally fails because he has not established that either the Ring camera footage or the text messages exist. As discussed in relation to his ineffective-assistance argument, defendant presumes without providing any support that this evidence existed, and

---

[5] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

further, that it was exculpatory. Because defendant failed to obtain an evidentiary hearing or otherwise develop the record in the trial court, his speculative arguments are insufficient to establish a *Brady* violation, and his claim fails. See *Kelly*, 231 Mich App at 640-641.

## C. LEADING WITNESSES

Defendant next argues that the prosecutor repeatedly led witnesses at trial. "Leading questions should not be used on direct examination except as necessary to develop a witness's testimony." MRE 611(d)(1). Beyond citing MRE 611(d)(1), defendant offers no explanation of how he was prejudiced or denied a fair trial by any of the leading questions that he cites, and we could consider this issue abandoned. See *Kelly*, 231 Mich App at 640-641. Leading questions are not categorically prohibited. See MCL 768.24 ("Within the discretion of the court no question asked of a witness shall be deemed objectionable solely because it is leading."). "Further, reversal is not required simply because leading questions were asked during trial. In order to warrant reversal, it is necessary to show some prejudice or patterns of eliciting inadmissible testimony." *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001) (quotation marks and citation omitted).

Defendant first cites these two exchanges between the prosecutor and Derrick:

*Q.* And you indicated he got in his car and then he started shooting. Was he outside of his vehicle at some point?

*A.* Yeah. He came out. He was outside his car. That's when he was—

\* \* \*

*Q.* Was that Ring camera functional after the fire that occurred to your house?

*A.* No.

*Q.* Okay. It was damaged by the fire?

*A.* It was damaged.

*Q.* Okay. So if it was damaged, there would be no footage to recover from a Ring camera?

*A.* No.

The trial court sustained objections to these exchanges as leading and instructed the prosecutor to use open-ended questions, so it is unclear how defendant was prejudiced by either exchange. Regarding the first exchange, defendant alleges prejudice because Derrick had not yet identified defendant as the shooter. However, Derrick consistently testified that defendant was the shooter throughout the rest of his testimony. To the extent that the prosecutor's statement could have prejudiced defendant even after the trial court corrected the prosecutor's use of leading questions, the trial court later instructed the jury that the lawyers' questions were not evidence. That

instruction presumably cured any error. See *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003) ("Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors."). Although the second exchange was leading, Derrick gave the same answer after the prosecutor rephrased the question. Again, defendant does not identify any prejudice from this testimony, nor does he object to the content of the testimony. Officer Tobel separately testified that the Ring camera was damaged, so the jury heard that information regardless. Therefore, we find that no prejudice resulted from the second exchange because Derrick's testimony in response to the leading questions was largely cumulative.

For his third example of the prosecutor's leading questions, defendant cites this exchange between the prosecutor and defendant's father:

> *Q.* And [defendant] was at your house the day of the 16th?
>
> *A.* Yes.
>
> *Q.* Okay. April 16th of '23?
>
> *A.* Yes.
>
> *THE COURT*: The night of the 16th, correct—
>
> *THE WITNESS*: Yes, the night, yes.
>
> *THE COURT*: —going into the 17th?
>
> *THE WITNESS*: Yes.

Half of the leading questions in this exchange were asked by the trial court itself, so those questions could not be considered prosecutorial error. And at this point in his testimony, defendant's father had already testified that defendant was at his house on that day, so the prosecutor's questions were clearly just intended to clarify his previous testimony. See MRE 611(d)(1). Furthermore, defendant does not explain how to the questions resulted in prejudice or inadmissible testimony. In sum, defendant has not shown that any of the prosecutor's questions deprived him of a fair trial, nor has he established plain error affecting his substantial rights in regard to the questions that he did not object to in the trial court. Without showing "some prejudice or patterns of eliciting inadmissible testimony," reversal is not warranted. *Watson*, 245 Mich App at 587 (quotation marks and citation omitted).

## D. OTHER-ACTS EVIDENCE

Defendant argues that the prosecutor erred when she elicited testimony from Derrick about the October 2021 shooting even though she did not express her intention to introduce that evidence in her motion in limine for other-acts evidence. But defendant was the one who first requested to introduce evidence about the October 2021 shooting by requesting to admit the ShotSpotter reports. When the trial court granted that request, the prosecutor expressly asked the trial court whether she could ask about the reports on direct examination. The trial court told her, "You can ask about anything you would like," and both parties expressed agreement with the trial court's

-10-

ruling.  Under these circumstances, we cannot conclude that the prosecutor committed any error, let alone that the error was prejudicial and denied defendant a fair trial.  See *Knapp*, 244 Mich App at 378.  Accordingly, defendant's unpreserved claim does not warrant reversal.

## E.  CLOSING REMARKS

Finally, defendant argues that the prosecutor erred when she argued in her closing that defendant's vehicle did not have bullet holes when it was impounded and that defendant had a longstanding grudge against Derrick, and when she implied that defendant had committed arson.  "A prosecutor may not make a factual statement to the jury that is not supported by the evidence . . . ."  *Dobek*, 274 Mich App at 66.  However, even if these statements were improper, "[e]rror warranting reversal does not occur where a defendant fails to articulate how he was harmed."  *People v Ackerman*, 257 Mich App 434, 450; 669 NW2d 818 (2003).  Defendant does not explain how any of these statements prejudiced the outcome of his trial.  Furthermore, the trial court instructed the jury not to consider evidence that defendant may have committed a separate crime or improper act as evidence of his guilt, that the lawyer's arguments were not evidence, and that it must base the verdict solely on the evidence presented.  To warrant reversal in the context of prosecutorial misconduct, a defendant must show the curative instruction was inadequate to cure any defect.  *Id*. at 449.

Defendant offers no argument as to how the jury did not follow the trial court's instructions or why the instructions did not cure any prosecutorial error.  See *Abraham*, 256 Mich App at 279.  Accordingly, defendant is not entitled to reversal on the basis of any prosecutorial error.  And because we have not found that either defense counsel or the prosecutor committed any error, or that defense counsel was ineffective, defendant has also failed to establish that the cumulative effect of the alleged errors justify reversal in the aggregate.  See *Dobek*, 274 Mich App at 106.

## IV.  DOUBLE JEOPARDY

Finally, defendant argues that his two assault convictions for a single act violate his constitutional right to be free from multiple punishments.

## A.  PRESERVATION AND STANDARD OF REVIEW

When a double jeopardy challenge is raised for the first time on appeal, it is not preserved for appellate review.  See *People v McGee*, 280 Mich App 680, 682; 761 NW2d 743 (2008).  "We review an unpreserved claim that a defendant's double jeopardy rights have been violated for plain error that affected the defendant's substantial rights, that is, the error affected the outcome of the lower court proceedings."  *Id*.  We reverse "only if the plain error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings."  *Id*.

## B.  ANALYSIS

"Both the United States and the Michigan constitutions protect a defendant from being placed twice in jeopardy, or subject to multiple punishments, for the same offense."  *Id*.  See also US Const, Am V; Const 1963, art 1, § 15.  "[T]he question of when multiple punishments are

constitutionally permissible is a matter of determining what the Legislature intended." *People v Wafer*, 509 Mich 31, 38; 983 NW2d 315 (2022).

> If the Legislature clearly intended to impose multiple punishments, the imposition of multiple sentences is permissible regardless of whether the offenses have the same elements, but if the Legislature has not clearly expressed its intent, multiple offenses may be punished if each offense has an element that the other does not. [*McGee*, 280 Mich App at 683.]

Defendant argues that his convictions of AWIGBH under MCL 750.84, and felonious assault under MCL 750.82, along with the corresponding felony-firearm convictions, violate his constitutional right to be free from multiple punishments. "To determine whether the Legislature authorized defendant's two convictions, we must first examine the two statutes at issue in this case." *Wafer*, 509 Mich at 40. The AWIGBH statute reads, in pertinent part, as follows:

> (1) A person who does either of the following is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $5,000.00 or both:

> (a) Assaults another person with intent to do great bodily harm, less than the crime of murder.

> \* \* \*

> (3) This section does not prohibit a person from being charged with, convicted of, or punished for any other violation of law arising out of the same conduct as the violation of this section. [MCL 750.84(1)(a) and (3).]

The elements of AWIGBH thus are "(1) an assault, i.e.[,] an attempt to offer with force and violence to do corporal hurt to another coupled with (2) a specific intent to do great bodily harm less than murder." *McKewen*, ___ Mich at ___; slip op at 5 (quotation marks and citation omitted).

The felonious-assault statute reads, in pertinent part, as follows:

> [A] person who assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $2,000.00, or both. [MCL 750.82(1).]

Thus, the elements of felonious assault are "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *McKewen*, __ Mich at ___; slip op at 6 (quotation marks and citation omitted).

Defendant argues that AWIGBH requires an intent to inflict great bodily harm less than murder, which felonious assault does not require. But in *McKewen*, our Supreme Court explained that although AWIGBH and felonious assault "contain conflicting intent requirements, the

Legislature has nonetheless explicitly indicated its intent to permit multiple punishments for a single instance of assaultive conduct in MCL 750.84(3) of the AWIGBH statute." *McKewen*, ___ Mich at ___; slip op at 11. "By including the expansive phrase 'any other violation of law' in MCL 750.84(3) while aware of the 'without inten[t]' language in MCL 750.82(1), it is evident that the Legislature intended to allow convictions for both offenses." *Id*. at ___; slip op at 14. The *McKewen* Court held that "convictions for both AWIGBH and felonious assault arising out of the same act do not violate constitutional double-jeopardy protections because the AWIGBH statute authorizes multiple punishments for the same conduct." *Id*. at ___; slip op at 16. Accordingly, defendant's convictions of AWIGBH and felonious assault for the same conduct do not violate double jeopardy.

## V. CONCLUSION

Defendant has failed to demonstrate on the existing record that the prosecutor or defense counsel made any errors in the trial court that prejudiced his case. His convictions for AWIGBH and felonious assault, along with the accompanying felony-firearm offenses, did not violate double jeopardy because Legislature has clearly expressed its intent to allow an AWIGBH conviction to be paired with other convictions for the same act.

Affirmed.

/s/ Mariam S. Bazzi
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle